**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff, | Criminal No. 03:13-cr-00162 (DRD) |
| v. | |
| **THOMAS FARMER,**<br>Defendant. | |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER CASE**

### I.      INTRODUCTION

Defendant's motion to transfer largely rehashes arguments raised by co-conspirator Frank Peake in his pre-trial motions and throughout his trial.  Like Peake, Defendant asserts that he cannot obtain a fair trial in Puerto Rico and that the *Platt* factors favor a transfer to the Middle District of Florida.  The Court rejected those arguments in *Peake* and should do the same here.

The trial record in the *Peake* case demonstrates that Defendant can receive a fair trial in Puerto Rico.  Contrary to Defendant's repeated accusations, the government has not alleged that Puerto Rico consumers were the victims of this conspiracy.  Having attended the *Peake* trial, defense counsel knows that the government proved that the victims were the companies and government agencies that paid higher rates for shipping cargo to and from Puerto Rico.  The government never attempted to prove that those higher costs were passed through to individual Puerto Rico consumers, nor will it do so in this case.  In *Peake,* the Court repeatedly rejected these same arguments about juror bias and prejudice, and it should do so here as well.

Defendant's pretrial publicity argument falls woefully short of what is required for transfer, which has typically been reserved for cases like the Oklahoma City bombing and other heinous, sensational crimes.  In *Peake*, jury questionnaires and voir dire were used to identify

and dismiss jurors who may have been biased or exposed to news stories, and the same options would be available in this case if the court deems them appropriate.

Defendant's analysis of the *Platt* factors is virtually identical to that of Peake in his unsuccessful transfer motion. In this case, these factors differ in only two significant respects. First, Defendant recently had heart surgery and may need another operation before trial. But courts generally decline to transfer venue in criminal cases for health reasons. Moreover, trial is a year away. Defendant's medical condition can change dramatically between now and then, so his current condition does not warrant a transfer. Second, this Court has now presided over the *Peake* trial. Its familiarity with the facts of this conspiracy, already extensive at the time it denied Peake's motion for a change in venue, is now even greater. Judicial economy was the most important factor in denying Peake's transfer motion. It deserves even more weight now that the Court, in the *Peake* case, has ruled upon the very same legal and evidentiary questions that will be at issue here.

Accordingly, Defendant has not met his burden of justifying a transfer under Rule 21, and this Court should deny Defendant's motion to transfer.

## II.    LEGAL STANDARD

"[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a); *see also United States v. Santiago*, 83 F.3d 20, 25 (1st Cir. 1996) (finding that a district in which the culmination of a conspiracy occurs "provides a lawful venue for the prosecution of the offense"). Because the purpose of the charged conspiracy was to increase shipping rates to and from Puerto Rico and

acts in furtherance of the conspiracy occurred here, this case is undeniably prosecutable in Puerto Rico.

Under Federal Rule of Criminal Procedure 21, a criminal case may be transferred to another district only when "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there" or "for the convenience of the parties, any victim, and the witnesses, and in the interests of justice." Fed. R. Crim. P. 21(a), (b).  "[T]he choice of venue is in the first instance a matter of prosecutorial discretion." *United States v. Walker*, 665 F.3d 212, 223 (1st Cir. 2011).  Defendant bears the burden of proving a transfer is appropriate.  *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 10 (1st Cir. 2000).

### III.   ARGUMENT

Defendant has not met his burden of justifying a transfer under either Rule 21(a), for undue prejudice, or Rule 21(b), for convenience.  Both arguments fail for the same reasons the Court denied Peake's motion to transfer.

**A.   Defendant Will Obtain a Fair and Impartial Trial in Puerto Rico**

Defendant's argument that the government intends to appeal to jurors as victims blatantly misrepresents the *Peake* trial record and completely ignores this Court's repeated rejections of the same argument in that case.  During the *Peake* trial, the government invariably asserted that the victims of this conspiracy were the companies and government agencies that purchased price-fixed freight services from the conspiring shipping carriers, not individual Puerto Rico consumers.  This was clear from the very outset of trial.  In its Opening Statement, the government stated that:

> ***customers that ship freight to and from Puerto Rico*** were not getting the benefits of price competition from the shipping companies.  You will hear instead that ***they were the victims of price fixing*** and they were paying more because of it.

*United States v. Peake*, No. 11-cr-512 (DRD) Tr. Vol. 1 at 5 (emphasis added).   Trial witnesses

from Caribbean Restaurants[1] and the U.S. Department of Agriculture were asked about their

efforts to obtain the most competitive prices from the shipping carriers, but they were not asked

whether increased shipping costs were passed through to Puerto Rico consumers.   In fact, as the

witness from the U.S. Department of Agriculture testified, shipping cost increases are paid out of

program funding.  Tr. Vol. 6 at 114.   Defendant cites to testimony from co-conspirator Peter

Baci (Dkt. 32 at 19), but that testimony expressly referred to increases in the various components

of the shipping rates – such as ocean freight, the bunker fuel surcharge, and the port security

charge – and ***not*** to any increases in the prices to individual consumers.  Dkt. 32, Ex. 2 at 151.

In *Peake,* this Court denied the defendant's mistrial motions based on these same

accusations of juror bias, ruling that the government's Opening Statement "did not inflame the

hearts of the jurors or otherwise arouse such pride for Puerto Rico as to ineradicably taint the

jury and thereby impede Peake's constitutional right to a fair trial by an unbiased jury."  *Peake,*

Dkt. 178 at 3, 4.  In addition, the Court instructed the jury on two occasions that it could not base

its verdict on pity or sympathy to Puerto Rico businesses or consumers, which it correctly

concluded "satisfactorily assuaged any concerns of improper prejudice." *Id.* at 5.  The same can

be done in this case.

As demonstrated by the careful, lengthy deliberations in his case, Frank Peake received a

fair trial in Puerto Rico.[2]  Tom Farmer can as well.  He should not be permitted to use the

---

[1]    Defendant's assertion that the government called a witness from Burger King, which is
headquartered in Miami, as a victim witness during the *Peake* trial is an example of his factual
distortions.  Dkt. 32 at 10.  As defense counsel knows, the government instead called a witness
from Caribbean Restaurants, a Puerto Rico company that owns Burger King restaurants in Puerto
Rico.  That witness, Gabriel Lafitte, resides in Guaynabo.  Tr. Vol. 4 at 106-07.

[2]    *See United States v. McVeigh*, 153 F.3d 1166, 1222 (10th Cir. 1998) (holding that two
days of jury deliberations in a death penalty case evidenced that the jury "made a reasoned,

seriousness of his crime -- participating in a conspiracy that was pervasive and affected virtually all of the companies and government agencies shipping freight to and from Puerto Rico[3] -- as a justification for a transfer from this District. For many years, Defendant was Vice President, Price and Yield Management, responsible for his company's pricing of freight services in the Puerto Rico trade lane. As the Court noted during the Peake trial, when "you have Puerto Rico as your client, as your main client, and you violate federal law, you know, there is a big chance that the case is going to end up in Puerto Rico because your main client appears to be in Puerto Rico." Tr. Vol. 4 at 170.

Defendant also claims he cannot receive a fair trial in Puerto Rico because of the pretrial publicity surrounding a chassis surcharge imposed by the four Jones Act carriers in December 2012, almost a year and a half before trial will begin. But Rule 21(a) "has been applied almost exclusively in cases in which pervasive pretrial publicity has inflamed passions in the host community past the breaking point." *Walker*, 665 F.3d at 223. Requests to transfer venue were denied in the 1993 World Trade Center bombing case, the prosecution of American Taliban John Walker Lindh, and in the highly publicized prosecution arising from the Enron bankruptcy. *Skilling v. United States*, 130 S.Ct. 2896, 2913 n.11 (2010) (citing cases). As the Supreme Court held in *Skilling,* news stories must typically present "vivid, unforgettable information" to be "particularly likely to produce prejudice" and generally must be specifically aimed at the individual on trial. *Id.* at 2916, n.17.

---

moral judgment"); *United States v. Gilsenan*, 949 F.2d 90, 96 (3d Cir. 1991) (holding that lack of juror prejudice was demonstrated by length of deliberations).

[3]     The purpose of the conspiracy was to increase freight rates and the profitability of the carriers. Tr. Vol. 4 at 150 (testimony of Sea Star's Peter Baci); Tr. Vol. 2 at 43 (testimony of Horizon's Greg Glova). The conspiracy was successful in doing so. Tr. Vol. 4 at 151 (Baci; increases "90 percent plus" attributable to the conspiracy).

Defendant does not come close to meeting this standard.  He attaches a smattering of articles about chassis fees – which were not even part of the charged conspiracy -- that do not mention the Defendant.  The articles certainly contain no "vivid, unforgettable information," and the publicity here falls far short of the publicity generated by the Oklahoma City bombing case, which was transferred, or any of the cases cited in *Skilling* where the Supreme Court overturned convictions on pretrial publicity grounds.  *Id.* at 2913-14.

In any event, jurors who have been exposed to pretrial publicity can be identified and dismissed for cause.  During the *Peake* trial, a comprehensive juror questionnaire and voir dire were used to identify and dismiss at least three individuals who had been exposed to pretrial publicity.[4]  That procedure succeeded in the identification and dismissal of a small number of such jurors, and it will succeed here.

**B.      Convenience Does Not Justify a Transfer**

As a general rule, a criminal case should be retained in the jurisdiction in which the charges were brought.  *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 463-64 (S.D.N.Y. 1997) (citing cases).  *See also United States v. Quinn,* 401 F. Supp. 2d 80, 85 (D.D.C. 2005) (holding that Rule 21(b) should be "interpreted . . . as favoring the government's choice of forum"; "the Court should err on the side of denying the motion to transfer").  A defendant seeking a transfer "under Federal Rule of Criminal Procedure 21(b) . . . must demonstrate that prosecution of the case in the district where the count was properly filed would 'result in a ***substantial balance of inconvenience*** to the defendant.'"  *United States v. Ferguson*, 432 F.

---

[4]      This does not even account for the jurors that the parties agreed to dismiss before voir dire because they identified some potential for juror bias in their juror questionnaires based on any pretrial publicity.  The government would be willing to similarly meet and confer with Defendant's counsel in advance of voir dire for the purpose of streamlining the voir dire process and dismissing any jurors who exhibit a potential for juror bias.

Supp. 2d 559, 562 (E.D.Va. 2006) (quoting *United States v. Hurwitz*, 573 F. Supp. 547, 552

(S.D.W.Va. 1983) (quoting *United States v. Baltimore & Ohio Railroad Co*., 538 F. Supp. 200,

205 (D.D.C. 1982)) (emphasis added)).

    In determining whether to grant a motion to transfer based on Rule 21(b), courts consider

the ten factors enumerated by the Supreme Court in *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S.

240 (1964).[5]  "No one factor is likely to be dispositive, but all should be considered under the

circumstances."  *United States v. Acevedo-Vila*, No. 08-cr-36, 2008 WL 5130740, at *4 (D.P.R.

Dec. 4, 2008) (quoting *United States v. Muratoski*, 413 F. Supp. 2d 8, 9-10 (D.N.H. 2005)).

    Defendant has failed to meet his burden of showing substantial inconvenience.  In

denying Peake's motion to transfer, the Court found that the following *Platt* factors weighed in

favor of transfer:  (1) location of the defendant; (2) location of possible witnesses; (3) location of

events likely to be in issue; (6) expense to the parties; (7) location of counsel; (8) relative

accessibility of place of trial; and (9) docket conditions in each district.  *Peake,* Dkt. 62 ("*Peake*

Order") at 10-12.  Although the government respectfully contends that certain of these factors

could have been found to be either neutral or to weigh against transfer, it concedes that the Court

may analyze these factors in the same way in this case.  Both Peake and Defendant lived and

worked in Jacksonville until close to indictment, have counsel located in Florida (although two

of Defendant's attorneys are from Virginia), promised to call witnesses from Florida (although

---

[5]     These are: (1) location of the defendant; (2) location of possible witnesses; (3) location of
events likely to be in issue; (4) location of documents and records likely to be involved; (5)
disruption of the defendant's business unless the case is transferred; (6) expense to the parties; (7)
location of counsel; (8) relative accessibility of place of trial; (9) docket conditions in each
district; and (10) any other special elements which might affect the transfer. *Id.* at 243-44.

Peake did not), contended that the conspiratorial conduct occurred in Florida, claimed that

Florida was less expensive, and asserted that docket conditions favored Florida.[6]

In *Peake,* this Court nonetheless denied the motion to change venue, recognizing that the

*Platt* factors are not meant to be a quantitative analysis.  It looked particularly to the strength and

compelling nature of the evidence supporting the tenth factor, special elements affecting transfer.

It noted its prior experience in handling litigation related to this conspiracy:

> Frankly, the undersigned judge is in an excellent position to handle the present case
> having presided over both related civil and criminal matters; the undersigned's ability to
> utilize that acquired knowledge helps further the interests of judicial economy as it would
> take another judge, despite being very capable, longer to familiarize himself with the
> facts and intricacies of the present controversy.

*Peake* Order at 14.  Judicial economy is a sound basis on which to deny motions to transfer,

particularly in complex Sherman Act prosecutions requiring substantial investments of judicial

time and effort.  For example, in *United States v. Ashland Oil, Inc.,* 457 F. Supp. 661 (W.D. Ky.

1978), a district court judge denied a motion to change venue in a criminal antitrust case, in part

because it had "spent considerable time in familiarizing itself with many of the facets of [the]

case."  *Id.* at 664.  A transfer would have required a new judge to spend significant time learning

the same facets of the case, which the court observed was not in the interests of "judicial

economy."  *Id.*

In this case, the interests of judicial economy in keeping this case in Puerto Rico are now

even more compelling than in *Peake* because this Court has presided over the *Peake* trial,

involving the same conspiracy and a number of the same witnesses and legal issues.  It has made

---

[6]     The Court in *Peake* found that the fourth factor (location of documents and records
likely to be involved) and the fifth factor (disruption of the defendant's business) were neutral.
*Peake* Order at 10 n.4, 12.  The Court's prior analysis of the fourth and fifth factors applies
equally in this case because the relevant records have been produced to Defendant almost
entirely in electronic form and Defendant is not currently employed.

a variety of rulings regarding motions, jury instructions, and evidentiary issues that will arise in the trial of this case.  The Court is thoroughly familiar with the record, understands the issues, and has demonstrated its ability to empanel a fair and unbiased jury.  This acquired knowledge will be wasted if the case is transferred.

Indeed, Defendant's own briefing demonstrates the need for this Court retaining the case. His brief misconstrues the charged conspiracy, misrepresents testimony, and even ludicrously suggests that his former employer, Crowley Liner Services – which **_pled guilty_** to participating in the charged conspiracy[7] – was somehow a **_victim_** of the conspiracy.  Dkt. 32 at 4-5.  For instance, Defendant claims that this conspiracy was limited to the 50/50 market share split between two of the corporate co-conspirators, Sea Star and Horizon.  Dkt. 32 at 5.  That split was merely **_one of several means and methods_** that witnesses in _Peake_ testified were used to carry out the conspiracy.  Although Defendant did not participate in that particular means and method of the conspiracy, the Court instructed in _Peake_ that the jury "need not find that [Defendant] agreed specifically to or knew about all the details of the crime . . . or that he participated in each act of the agreement or played a major role" as long as the government proves "beyond a reasonable doubt that he knew the essential features and general aims of the conspiracy."  _Peake_, Dkt. 186 at 22.  Witness testimony, secret emails, records of hundreds of competitor phone calls, and recorded conversations will prove that Defendant was aware of and participated in the essential features and aims of the conspiracy.  In fact, evidence from the _Peake_ trial identified Defendant as a co-conspirator.[8]

---

[7]      _United States v. Crowley Liner Services, Inc.,_ No. 03:12-cr-00590 (DRD) (D.P.R.) (plea entered on July 31, 2012).

[8]      Both Greg Glova and Peter Baci testified that the Defendant participated in the conspiracy.  Tr. Vol. 2 at 43-44 (Glova); Tr. Vol. 4 at 139 (Baci).

A judge unfamiliar with the actual evidence might be misled by such arguments or waste valuable time and resources to determine their fallacy.  This Court, having presided over the *Peake* trial and having taken a guilty plea from Crowley Liner Services[9] for its participation in the conspiracy with Sea Star Line and Horizon Lines, will not be similarly misled.

The only potentially countervailing "special element" is Defendant's health.  The cases, however, "demonstrate a general reluctance by the courts to transfer venue in criminal cases based upon the ill health of a defendant."  *United States v. Lopez,* 2002 WL 31498984 *3 (D. Kan. Sept, 5, 2002); *see also Ashland Oil, Inc.,* 457 F. Supp. at 663 (stating that "federal courts have not been liberal in granting a change in venue or continuances to defendants who allegedly are suffering from ill health").  For example, transfer requests have been denied where defendants have claimed: "a heart occlusion from which recovery has been slow and the danger to [defendant's] life extreme from any unusual exertion," *United States v. West Coast News Company,* 216 F. Supp. 911, 922-23 (W.D. Mich. 1963); and "hypertension [for which] a lengthy trial . . . with the added stress of trial and absence from [his] home and community would be . . . detrimental to his health," *Ashland Oil, Inc.,* 457 F. Supp. at 663.  Transfer motions granted for health reasons have typically involved a unique set of facts, such as the defendant's "total disability."  *See*, *e.g.*, *Lopez*, 2002 WL 31498984 at *3 (granting a transfer where the defendant was a quadriplegic and completely dependent on others for all activities of daily living); *United States v. Liska*, 1995 WL 704775 *1, *6 (N.D. Ill. Nov. 27, 1995) (granting a transfer where the defendant was "totally disabled" and "so incapacitated that . . . no case generating a published opinion has dealt with facts like the facts in this case").

---

[9]      A plea that the evidence at trial will demonstrate was based on Defendant's conduct.

In this case, trial is nearly a year away.  Between now and then, Defendant's medical condition may improve considerably.  Indeed, the government counsel recently tried a defendant from Taiwan who, after indictment but before trial, suffered a heart attack and underwent triple by-pass surgery in Taiwan in February 2011.  He recovered and sat through an eight-week trial in the Northern District of California less than a year later.  Declaration of Brent Snyder, ¶2.

A year from now, if Defendant is healthy enough to stand trial in the Middle District of Florida, he will be healthy enough to stand trial in Puerto Rico.  He may prefer to be closer to the offices of his local doctors in Jacksonville, but that preference is insufficient to justify a transfer.  Where quality emergency care is available in the District, as it is in San Juan, courts have denied motions to transfer venue based on the defendant's health condition.  *See United States v. Streeval*, 2001 WL 34355637, at *4 (E.D. Pa. Dec. 3, 2001) (holding that "[s]hould a medical emergency develop while she is here, Ms. Streeval will be within minutes of several hospitals capable of rendering excellent care.  [Her doctor] can collaborate with local physicians and monitor her condition"); *Ashland Oil*, 457 F. Supp. at 663 (holding that defendant could stand trial in city with respected medical school with many excellent doctors).

///

///

## IV.    CONCLUSION

For the foregoing reasons, the government respectfully requests the Court to deny

Defendant's motion to transfer the case to the Middle District of Florida.

DATED this 28th day of May, 2013.

Respectfully submitted,

_/s/ Brent Snyder_

Brent Snyder, PR Attorney #G01209
Heather S. Tewksbury, PR Attorney #G01507
Trial Attorneys
U.S. Department of Justice, Antitrust Division
450 Golden Gate Avenue, Room 10-0101
San Francisco, California 94102
Tel:  415-436-6675
Fax:  415-436-6687
Email: brent.snyder@usdoj.gov

Craig Y. Lee, PR Attorney #G01208
Jon B. Jacobs, PR Attorney #G01508
Trial Attorneys
U.S. Department of Justice
Antitrust Division
450 5th St., NW Suite 11300
Washington, DC 20530
Tel: (202) 514-5012
Fax: (202) 514-6525
Email: jon.jacobs@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2013, a true and correct copy of the foregoing

UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO

TRANSFER was filed electronically and to the best of my knowledge, information and

belief, counsel for defendant will be notified through the Electronic Case Filing System.

_/s/ Brent Snyder_____
Brent Snyder, PR Attorney #G01209
Trial Attorney
U.S. Department of Justice, Antitrust Division
450 Golden Gate Avenue, Room 10-0101
San Francisco, California 94102
Tel:  415-436-6675
Fax:  415-436-6687
Email: brent.snyder@usdoj.gov