IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**
Plaintiff,

v.

**THOMAS FARMER,**
Defendant.

Criminal Case No. 3:13-cr-00162-DRD

# DEFENDANT'S SUPPLEMENT MEMORANDUM IN SUPPORT OF HIS BRADY MOTION

In its Opposition Brief, the Government contends that it has no *Brady* obligations as to competition evidence because competition is neither material nor exculpatory to an antitrust case. This argument is meritless, and justifies granting the defendant's motion for production of *Brady* material, for an evidentiary hearing, and for a continuance.

The Government makes this argument for the first time in this case in response to this Court's Order compelling it to produce its *Brady* evidence by April 16, 2014. On that day, the Government asserted it had timely complied with its *Brady* obligations but denied that it searched for, or produced, competition evidence because it does not qualify as *Brady* material. But the *defendant* made a written *Brady* demand for competition evidence *on April 19, 2013*. Exhibit 1, ¶¶ 15-17 (seeking such documents regarding Horizon, Sea Star, and Trailerbridge). At no time thereafter, did the Government disclose that it was unilaterally excluding from its *Brady* obligations all competition evidence as falling outside of its *Brady* obligations. *See* Government

Discovery Responses (Docket No. 97, Exhibits) (Government *Brady* letters lacking any assertion that competition evidence sought by defendant was not *Brady*). Last year, the Government denied there was evidence that the 50/50 vessel conspirators targeted the barges (notwithstanding their fundamental agreement not to target each other), labeling such an assertion by the defense as "ludicrous." Docket No. 38, at 9-10. Now, with trial approaching, the Government takes the different tack of denying that competition is relevant to an antitrust prosecution under section 1 of the Sherman Act.

The Government fails to cite a single case holding that competition evidence is not exculpatory (for *Brady* or any other purposes). Moreover, the Government offers this Court no factual basis upon which to make this the first Sherman Act case in history to do so.

### A. Competition is *Brady* Material in a Section 1 Conspiracy Case

Evidence of competition is exculpatory both as to the Indictment's lack of merit, and for purposes of impeaching the Government's trial witnesses. *See, e.g.*, *Drumgold v. Callahan*, 707 F.3d 28, 38 (1st Cir. 2013) ("Evidence is favorable to a defendant if it is either exculpatory or impeaching in nature."); *United States v. Jones*, 620 F.Supp.2d 183, 168 (D. Mass. 2009).

The "policy unequivocally laid down by the [Sherman] Act is competition." *Northern Pac. Ry. Co. v. U.S.*, 356 U.S. 1, 4 (1958). "The Sherman Act was intended to promote competition and to block the formation of monopolies." *Sandy River Nursing Care v. Nat'l Council*, 798 F.Supp.810, 814 (D. Me. 1992) (citing *Standard Oil Co. v. FTC*, 340 U.S. 231, 249 (1951). The notion that competition is immaterial to a Sherman Act prosecution is foreign to the law.

This is best seen in the bench trial ruling in *U.S. v. Bestway Disposal Corp.*, 724 F. Supp. 62 (S.D.N.Y. 1988) ("*Bestway*"). In *Bestway*, the Government prosecuted waste haulers and their principals from different towns within a New York county on a single count of conspiring to restrain the market for hauling waste. *Id*. at 65. After a nine-day bench trial, the district court acquitted, concluding that the evidence demonstrated competition, not collusion. *Id.* at 69 ("The central policy underlying the Sherman Anti-Trust Act is to protect 'competition based on efficiency,' thereby shielding the public from oppressive economic forces. I fail to see where any of the activities that the defendants engaged in contradicted this policy.") (quoting *Connell Constr. v. Plumbers & Steamfitters Local*, 421 U.S. 616, 623 (1975)).

For example, the *Bestway* court concluded that a defendant's statement to a competitor that " I will stay out of Webster if you stay out of Brighton," was the "statement of a defeated general" who after losing a competitive campaign for Webster, was simply conceding that there was "an acceptance of the competitive reality' faced by the parties." *Id*. at 67 (quoting *Richards v. Neilson Freight Lines*, 810 F.2d 898, 903 (9th Cir. 1987) (Kennedy, J)).

Similarly, the *Bestway* court rejected the sufficiency of the defendants' statements that "I will leave you alone if you leave me alone," because the evidence was to the contrary—that they all would compete aggressively against one another. 724 F. Supp. at 68 ("Although the principals sought security through some form of understanding or assurance not to solicit each other's accounts, none of them ever fully intended it."). Specifically, "[w]hen the principals of the defendant corporations discussed not soliciting one another's commercial accounts, they essentially engaged in 'wishful thinking,*' knowing with certainty that if a profitable opportunity to take a commercial account from another hauler presented itself, the hauler would not hesitate to take that account*." 724 F. Supp. at 68 (emphasis added). Evidence supporting this finding

3

included that "each defendant lost commercial accounts to and took commercial accounts from other of the named defendants" –i.e., there was evidence of competition. *Id*. This competition evidence demonstrated: "There simply was no meeting of the minds, no mutuality of purpose, to support a finding that a criminal agreement to control territories existed among the defendants." *Id*.

Obviously, the fact and degree of competition among defendants was critical to the *Bestway* opinion's factual findings as to each defendant's lack of criminal intent. It should come as no surprise to the Government that evidence of competition is exculpatory to a criminal accusation of a conspiracy to prevent competition. Indeed, that is precisely why *defendant Farmer* submitted multiple written *Brady* demands upon the prosecution in April 2013 seeking evidence in the government's possession of such competition. Exhibit 1. Until this Court ordered the Government to fulfill its *Brady* obligations on April 16, 2014, the Government made no claim to the defense that competition evidence was outside of *Brady*. [1]

The Government's citation to *United States v. Andreas*, 216 F.3d 645 (7th Cir. 2000) to support its claim that competition is immaterial to a Sherman Act case, or to its *Brady* obligations therein, shows how far off track it has gone. Andreas was an antitrust conspiracy prosecution where some but not all defendants successfully defended on the ground that they were feigning collusion while practicing competition. Citing the *Bestway* opinion, the Seventh Circuit, however, upheld the validity of this defense. 216 F.3d at 669 ("We agree that a defendant's subjective intent is a required element of a criminal antitrust violation, *see United*

---

[1] "The *Brady* rule safeguards the fundamental principal that a trial is a search for the truth. It also protects the Government's unique interest in a criminal prosecution "not [to] win a case, but [ensure] that justice shall be done." Berger v. United States, 295 U.S. 78, 88, (1935)." *United States v. Thomas*, 2013 WL 5834450, *1 (S.D.N.Y. Oct. 30. 2013).

4

*States v. United States Gypsum Co.,* 438 U.S. 422, 434-36 (1978) , and that a defendant who pretended to agree but did not intend to honor the agreement could not be convicted of a crime. *See United States v. Bestway Disposal Corp.,* 724 F.Supp. 62, 67 (S.D.N.Y.1988).").

The Government further suggests that because it places no exculpatory value on competition evidence, it was free to ignore defendant's *Brady* request for such information for a year without telling the defense of its position, but then claim complete *Brady* compliance with this Court on April 16, 2014, a month before trial.  To the contrary, the Government's admission on April 16th that it considers competition evidence categorically outside of *Brady* irrefutably confirms that the Government is now in default of its *Brady* obligations.

Finally, the Government seeks to justify its unilateral exclusion of competition information from *Brady* by characterizing competition as merely "cheating" the conspiracy. Opp. Brief, at 6. But this assumes the existence of the conspiracy, and competition evidence directly undermines Government claims of intent to enter into a Sherman Act conspiracy. *Bestway*.  Evidence does not lose its exculpatory character because the Government would prefer not to believe it.  In addition, evidence of competition constitutes impeachment evidence as to any trial witness who testifies about an alleged lack of competition.  *Drumgold,* 707 F.3d at 38. It is possible, though doubtful, that the Government does not intend to call any witnesses to testify about anti-competitive conduct by the defendant.

  **B. The Government Has Admitted the Materiality of Competition Evidence**

About an hour after submitting its brief asserting that it had timely complied with all of its *Brady* obligations, the Government sent a side letter informing defense counsel "as a courtesy" that the Civil Division came to the Antitrust Division twice in 2013 to obtain its advise

5

and evidence about whether the Antitrust Division has evidence of antitrust collusion by Crowley with respect to government contracts.  *See* Exhibit 2 (April 16, 2014 letter).  The letter was sought in connection with *qui tam* lawsuit filed against Horizon, Sea Star, and Crowley on January 15, 2013 in Jacksonville federal court.  According to this side letter, the Antitrust Division informed the Civil Division in June 2013 that it had no such evidence other than that "collusion between the competitors targeting bunker fuel charges might have affected Crowley's government contracts." *Id*.  The Civil Division returned for advice in November 2013 and inquired about any "new" evidence, but the Antitrust Division again responded that "it did not have any new evidence regarding Crowley that implicated government contracts." *Id*.  The Government did not share this disclosure with this Court, but instead chose to defend its prior failure to disclose any information regarding the *qui tam* action on the ground that the Civil Division was "not part of the prosecution team in this criminal case."  Opp. Br., at 8.

     Initially, the Government "team" defense will not hold water because it was the Antitrust Division that weighed, measured, and judged its evidence to conclude that it was insufficient to meet even the minimal civil pleading standard of plausibility required for a federal complaint under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Whatever team relationship exists between the Civil Division and the Antitrust Division, the Antitrust Division is unquestionably wearing the same jersey as the Antitrust Division.  Indeed, the Government's Opposition Brief does not deny that the Antitrust Division is on the same team as the Antitrust Division.  The Antitrust Division's acts and determinations are its own, and it is the Antitrust Division's recently revealed acts which are in conflict with the case it has brought in this Court and with its claim of *Brady* compliance.

6

The Government ignores its own *Brady* Guidelines (created in the aftermath of prominent *Brady* failures) which state that "Where there is an ongoing parallel civil proceeding in which Department civil attorneys are participating, such as a *qui tam* case, the civil case files should also be reviewed" for disclosure purposes.  DOJ Guidelines (Exhibit 6 to Docket No. 81)), B4.  *See United States v. Jones*, 686 F.Supp.2d 147, 156-57 (D. Mass. 2010) (Deputy Attorney General has instructed all U.S. Attorneys to comply with Guidelines, designated compliance personnel, and directed training of all law enforcement agents).  Here, the only accommodation the Government offers to its own Guidelines is that they are "for guidance only and [are] not intended to have the force of law or to create or confer any rights, privileges, or benefits."  Opp. Brief, at 9 n.4 (quoting United States Attorney Manual).

This is not a case like the *Kyles* case, in which the Supreme Court had to plumb the depths of a prosecutor's "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."  *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).  Here, the Antitrust Division has admitted that *it* performed a culpability analysis for Crowley and *it* reached a determination in which *it* had sufficient confidence to advise the Civil Division that *it* lacked sufficient evidence to support a civil complaint against Crowley by the Government.

Each of the Antitrust Division's actions disclosed in the side letter (in June and November 2013) came *after* defendant's written *Brady* demands of April 19, 2013.  For example, *Brady* Request 13 asked for: "All documents or information containing communications to or from the Government about the lack of culpability of any company or individual that was the subject of the cabotage investigation."  Request 63 demanded: "All documents or information indicating that any market participant in the Puerto Rican cabotage

7

industry lacked culpability for [the] antitrust conspiracy alleged in the Puerto Rican cabotage market." These and other specific *Brady* requests were made, notwithstanding the Supreme Court precedent that the Government's *Brady* obligation is not dependent on a written request,[2] in order to give clear notice to the Government of *defendant*'s *Brady* expectations.

Similarly, Defendant asked the Government to disclose exculpatory evidence about the other barge company Trailerbridge, including documents raising doubt that Trailerbridge was a co-conspirator (Request 3), documents supporting the assertion made by prosecutor John Terzaken that Trailerbridge was a "ferocious" competitor with Crowley (Request 4), and documents about its status as a subject or target of the investigation. *Id*. 5. Rate or cargo competition from Trailerbridge directly undermines any claim that Crowley was free to collude with the vessel companies without risk of losing cargo and revenue to Trailerbridge. The Government has blown hot and cold in this case about Trailerbridge's participation in the conspiracy alleged, but Trailerbridge had contracts with the Government, and an election by the Government not to pursue Trailerbridge in its qui tam action is equally exculpatory as to Defendant Farmer and Crowley.

The Antitrust Division evaluated and re-evaluated the evidence in its possession in 2013 as to Crowley's culpability for collusion with Horizon and Sea Star (or with Trailerbridge) with respect to the Government's own contracts. Despite having repeatedly concluded that there was insufficient evidence of Crowley culpability—the Antitrust Division never disclosed this information to *defendant* up through, and including, its filing with this Court on Wednesday, April 16, 2014 announcing its full compliance with its *Brady* obligations.

---

[2]  *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

### C. Open File Discovery is No Substitute For *Brady*

Government Claims that its production of approximately 16 million pages of discovery satisfies its *Brady* obligations. Opp. Brief, at 4. Ironically, the Government recently volunteered that this same 16 million pages of discovery as the means by which the *defendant* can locate and learn the nature of the conspiracy he is charged with so as to preclude any need for a bill of particulars. Docket Entry No. 63, at 2. This same mound of material does double-duty as the sole location of both the charges and of the information against them. Open file discovery is no substitute for *Brady* compliance, and in any event, the Government has conceded that it has never treated competition evidence as *Brady,* and this presumably includes its own documents.

Initially, *defendant* denies that the data provided is, or has ever been, entirely searchable. Docket Entry No. 51, Exhibit 10 (Declaration of E. Weaver). Moreover, even it were entirely searchable, it would not absolve the Government of its *Brady* obligations. *U.S. v. Hsia*, 24 F.Supp.2d 14, 29-30 (D.D.C. 2001) (Friedman, J.) ("open -file discovery does not relieve the government of its *Brady* obligations" by production of 600,000 documents). The Government cites to Fifth Circuit precedent on the adequacy of open file discovery as a permissible means of satisfying *Brady*, but both Judge Friedman (author of the *Hsia* opinion), and recently this Court, have recognized that the First Circuit has rejected open file discovery as a means of providing adequate notice to a defendant. *U.S. v. Anderson*, 616 F.Supp.2d 110, 112 n.1 (D.D.C. 2006) (citing *U.S. v. De La Cruz-Paulino*, 61 F.3d 986, 993 (1st Cir. 1995) as support for rejecting government claim that open file discovery satisfies its Rule 16 obligations). Here, the Government has not identified any specific *Brady* evidence (other than modifications to 302 interview reports) from the 230 gigabyte haystack of discovery it has pointed to as the source of all *Brady*. Further, as described above, the Government has denied that competition evidence is *Brady*, and therefore has not searched this haystack for this exculpatory information. Finally, the

9

haystack does not contain any evidence of the Antitrust Division's exculpations of Crowley in the *qui tam* litigation.

**D. The Bargaining Documents to a Rule 11(c)(1)(C) Plea Define the Leniency Under Bargain**

The Government does not deny that, in the Rule 11(c)(1)(C) pleas at issue in this case, the Government determined the sentences through bargaining. Hence, the leniency bargained for will the range negotiated therein, and there is a paper trail following those negotiations. That is clearly impeachment material under *Brady*. And while the Government has little use for "dicta" from Chief Judge Fusté in *United States v. Vasquez-Botat* supporting this principle, and even less use for the case relied upon by Chief Judge Fusté (*United States v. Sudikoff*, 36 F.Supp.2d 1196 (C.D. Cal. 1999)), these are valid judicial opinions supporting disclosure of plea bargaining material under *Brady*. More to the point, this case is even more compelling, because the pleas all involved Rule 11(c)(1)(C) where almost all sentencing discretion is held by the prosecution, making the plea bargaining range also the range for bargained leniency

**E. The Court Should Compel the Government to Produce the Telephone Target List, or Permit a Pretrial Evidentiary Hearing**

During the *Peake* trial, a Government transcript of Mr. Glova's call to Gabriel Serra revealed that the taped calls were being made pursuant to a list of the government agent. At the time, the Government did not deny that this list existed. When Farmer asked for it in discovery, the Government said it could not find it. But the Government also said that it could not produce the majority of the exhibits to the 302s it produced because the exhibits are in the custody of the FBI, not the Antitrust Division.

The list is relevant to prove that the Government targeted Farmer before Glova did, and that Glova followed instructions from the agent as to how best secure the "leniency" that the tape also reveals he was focused upon so intently.

The Government does not deny that the list existed, nor does it explain what happened to it. Saying that the Government no longer possesses the list simply leads to the question of who lost or destroyed it—another ground of materiality under *Brady*. Accordingly, Defendant asks this Court to hold a pretrial evidentiary hearing on the whereabouts of this list.

### F. The Handwritten Notes that Triggered a *Brady* Disclosure By the Government should be Disclosed

The Government has identified dozens of entries in its interview reports that are sufficiently different from the contemporaneous notes of the persons attending the interviews that the Government felt compelled to make corrections under *Brady*. While applauding the Government's respect for *Brady*, it is the notes themselves which create the contradiction that rises to the *Brady* obligation of disclosure. Such notes themselves constitute the "evidence" which is *Brady*, not the Government's characterization of them. *See, e.g.*, *Smith v. Cain*, 132 S. Ct. 627 (2012) (investigator's notes constitute *Brady*). The Government acknowledges that this Court can order production if the defense request is "particularized and focused." Opp. Brief, at 14 (citing *U.S. v. Lopez*, 2007 WL 4556904 (D. Mass. 2007)). But the Government has itself provided the "particularized and focused" justification for disclosure by: (i) identifying the notes which generated the *Brady* disclosure obligation; and (ii) confirming that they contain exculpatory material within the meaning of *Brady*.

## Conclusion

For the foregoing reasons, this Court should grant Defendant's *Brady* motion, order an evidentiary hearing, and continue the trial date.

**CERTIFICATION:** I hereby certify having filed this motion through the EM/ECF filing system, which will notify all parties and counsel of record in this case.

Respectfully submitted,

Dated: April 21, 2014

By: */s/* _Terrance G. Reed____
By: /s/ _V. Thomas Lankford_
Terrance G. Reed (Pro Hac Vice)
  120.    Thomas Lankford (Pro Hac Vice)
Lankford & Reed, PLLC
120 N. St. Asaph Street
Alexandria, VA  22314
(Phone) 703-299-5000
(Facsimile) 703-299-8876
tgreed@lrfirm.net
vtlankford@lrfirm.net

By: /s/ _Mark Rosenblum____
Mark Rosenblum (Pro Hac Vice)
Mark Rosenblum, P.A.
1300 Riverplace Boulevard, Suite 601
Jacksonville, FL 32207
(Phone) 904-396-6100
(Facsimile) 904-346-4481
mark@markrosenblumlaw.com

By: /s/ _Joseph C. Laws_____
Joseph C. Laws (USDC-PR Bar No. 120306)
239 Arterial Hostos Avenue, Suite 402
San Juan, PR 00918
(Phone) 787-754-7777
(Facsimile) 787-763-5223
lawofficesofjosephlaws@gmail.com

*Counsel for Defendant Thomas Farmer*

**CERTIFICATE OF SERVICE**

      I hereby certify on the 21st day of April, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig Y. Lee, PR Attorney #G01208
Jon B. Jacobs, PR Attorney #G01508
Trial Attorneys
U.S. Department of Justice
Antitrust Division
National Criminal Enforcement Section
450 5th St., NW Suite 11300
Washington, DC 20530
Tel: (202) 307-6694
Fax: (202) 514-6525
Email: jon.jacobs@usdoj.gov

                                      By: /s/ Terrance G. Reed (Pro Hac Vice)
                                      LANKFORD & REED, PLLC
                                      120 N. St. Asaph Street
                                      Alexandria, VA  22314
                                      (Phone) 703-299-5000
                                      (Facsimile) 703-299-8876
                                      tgreed@lrfirm.net