IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>THOMAS FARMER,<br>Defendant. | Criminal No. 03:13-cr-00162 (DRD) |

**UNITED STATES' RESPONSE TO DEFENDANT'S
REPLY IN SUPPORT OF DEFENDANT'S *BRADY* MOTION**

The United States appreciates the opportunity to address defendant's Reply Brief relating to his *Brady* Motion. (Dkt. 101). As discussed below, the information disclosed to defendant on April 16, 2014 (Dkt. 101-1) does not constitute *Brady* material. It was the Antitrust Division's conclusions about certain evidence, not the underlying evidence itself (which defendant has had for a year now). Opinions and impressions of facts and evidence are not discoverable under *Brady* unless they include exculpatory facts, which these disclosures did not. Moreover, the conclusions related solely to whether defendant's former employer, Crowley Liner Services ("Crowley"), was involved in fixing one part (the base rate) of the freight rates applicable to one category of customer (the federal government). Defendant is charged with fixing rates <u>and</u> surcharges, and not just to government purchasers but commercial customers as well.

Even if this information is considered *Brady* material, it has been disclosed in a timely manner and defendant has suffered no prejudice. He has known since July 31, 2012 – almost two years ago – that Crowley pled guilty to fixing rates on contracts for non-government customers only. He has had since April 30, 2013 – one year ago – the documents, transcripts, interview memoranda and other evidence relating to Crowley's government contracts. That evidence formed the basis of the Crowley plea agreement and the Antitrust Division's statements

to the Civil Division. And the April 16, 2014 disclosures were made almost five weeks before trial – ample time for him to make effective use of its benefits, if any.

Defendant has not justified his requests for relief in his *Brady* motion, in either his Reply Brief (Dkt. 101) or his "Supplemental" Reply filed without leave on April 21, 2014 (Dkt. 107). The Civil Division is not part of the prosecution team in this criminal case. In his latest filing, defendant does not dispute that, instead arguing the unremarkable point that the Antitrust Division is on the same team as itself. (Dkt. 107 at 6). Because defendant already has all of the information in the Antitrust Division's possession that could possibly be considered *Brady* material relating to the *qui tam* action, he is not entitled to further relief.

## ARGUMENT

I. **The Information Disclosed by the United States in its April 16, 2014 Letter Did Not Constitute *Brady* Material**

In its April 16, 2014 letter to defendant, the United States disclosed the following:

1) On or about June 10, 2013 the Department of Justice Civil Division inquired of the Antitrust Division whether there was evidence that Crowley Liner Services, Inc. ("Crowley") colluded with its competitors on United States Postal Service or other United States government contracts. The Antitrust Division informed the Civil Division that it did not have any evidence that Crowley colluded with its competitors to fix the prices bid for government contracts, but that collusion between the competitors targeting bunker fuel charges might have affected Crowley's government contracts.

2) On November 12, 2013 the Civil Division informed the Antitrust Division that it lacked evidence that Crowley colluded with competitors to fix the prices of United States government contracts. The Civil Division asked the Antitrust Division if it was aware of any new evidence that Crowley colluded with its competitors on government contracts. The Antitrust Division informed the Civil Division that it did not have any new evidence regarding Crowley that implicated government contracts.

(Dkt. 101-1).

The information disclosed was the Antitrust Division's conclusions about the evidence against Crowley, not the evidence itself. No specific facts or pieces of evidence were identified. Instead, what was disclosed were the Antitrust Division's opinions based on the evidence that had already been provided. Even defendant concedes that these disclosures related to how "the Antitrust Division . . . weighed, measured, and judged its evidence . . . ." (Dkt. 107 at 6).

"[A] prosecutor's opinions and mental impressions of the case are not discoverable under *Brady* unless they contain underlying exculpatory facts." *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006); *see also Williamson v. Moore*, 221 F.3d 1177, 1182-83 (11th Cir. 2000). *Brady* does not require the prosecutor "to deliver his entire file to defense counsel, but only to disclose <u>evidence</u> favorable to the accused, that, if suppressed, would deprive the defendant of a fair trial." *United States v. Bagley*, 473 U.S. 667, 675 (1985) (emphasis added; footnote omitted). A prosecutor's opinion of the evidence is not itself evidence, nor does it contain exculpatory facts. To the extent there are exculpatory facts, they would be found in the actual evidence—the documents and interview memoranda—which the prosecutor considered in forming his opinion. In this case, that evidence was produced to defendant a year ago, in April 2013. Decl. of Jaime Amrhein ¶ 4, Dkt. 63-1.

Moreover, these conclusions related solely to Crowley's involvement in collusion to fix the <u>base</u> rates on <u>government</u> contracts, such as contracts for the U.S. Postal Service.[1] They made clear what defendant already knew from extensive pre-indictment disclosures and the discovery production: that there may have been some effect on Crowley's government contracts from collusion of bunker fuel surcharges.

---

[1] The Civil Division's focus under the False Claims Act, as it is always, was on the submission of false claims to the federal government. Press Release, U.S. Dep't of Justice, Office of Public Affairs, Two Ocean Shipping Companies to Pay $3.4 Million to Settle Claims of Price Fixing Government Cargo Transportation Contracts (Mar. 7, 2014), Dkt. 81-1.

Defendant is not charged with participating in a conspiracy to fix just base rates, nor is he charged with affecting only government contracts. Instead, he is charged with participating in a conspiracy "to suppress and eliminate competition by agreeing to fix rates and surcharges for Puerto Rico freight services" generally. (Dkt. 1 at ¶ 5). The Indictment lists several means and methods by which the conspirators carried out their unlawful purpose, including agreeing "to rig bids submitted to government and commercial customers of Puerto Rico freight services." *Id.* at ¶ 9(d). But the reference to government customers in defendant's Indictment does not mean that he himself personally rigged bids on government contracts. That section of the Indictment is expressly titled "Means and Methods of the Conspiracy," (emphasis added), and refers to things done by defendant "and his co-conspirators." *Id.* at ¶ 9. In the *Peake* trial, this Court admitted evidence and heard testimony showing that government contracts, such those for the U.S. Department of Agriculture School Lunch Program, were affected by the conspiracy.[2] A defendant need not have participated in every aspect of the conspiracy to be found guilty. *E.g., United States v. LiCausi*, 167 F.3d 36, 45 (1st Cir. 1999).[3]

In sum, the information disclosed in the government's April 16, 2014 letter was not materially exculpatory information as to defendant. It consisted of conclusions, not facts. The conclusions had nothing to do with defendant's involvement in fixing rates on commercial contracts. They related solely to Crowley's government contracts. And even for those contracts,

---

[2] *United States v. Peake,* No. 03:11-cr-00512 (DRD), Trial Tr. vol. 6, 102-119, Jan. 18, 2013 (testimony of Ron Reynolds of the U.S.D.A.).

[3] "[O]nce having entered into a common scheme with the other conspirators, [the defendant] is bound by all acts committed by them in furtherance thereof, including those acts committed without his knowledge before he joined the conspiracy." *United States v. Cintolo*, 818 F.2d 980, 998 (1st Cir. 1987) (quoting *United States v. Brasseaux*, 509 F.2d 157, 161 (5th Cir. 1975). As the First Circuit observed, "a conspiracy is like a train. When a party knowingly steps aboard, he is part of the crew, and assumes conspirator's responsibility for the existing freight – or conduct – regardless of whether he is aware of just what it is composed." *Id.* at 997 (citing *United States v. Baines*, 812 F.2d 41, 42 (1st Cir. 1987)).

they included <u>inculpatory</u> information as well – that there was evidence of collusion targeting bunker fuel charges that might have affected those contracts.

## II. Even if it Was *Brady,* the Information Was Disclosed in a Timely Manner and Defendant Has Suffered No Prejudice

Defendant has been on notice, for nearly two years, that his former employer pled guilty to conspiring to fix the rates charged solely to non-government purchasers. On July 31, 2012, almost eight months before defendant was indicted, Crowley pled guilty and its plea agreement explicitly limited the factual basis for the charged offense to price fixing on commercial contracts:

> 4. Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts against the defendant:
> . . .
> (b) During the relevant period, the defendant, through at least one of its officers, within high-level personnel of the defendant, participated in a conspiracy with other providers of Puerto Rico freight services, a primary purpose of which was to suppress and eliminate competition by fixing the base rates charged to *non-government customers* in particular contracts for certain Puerto Rico freight services. In furtherance of the conspiracy, the defendant, through at least one of its officers, engaged in discussions and attended meetings with representatives of other providers of Puerto Rico freight services. During these discussions and meetings, agreements were reached to fix the base rates to be charged to *non-government customers* in particular contracts for certain Puerto Rico freight services.

*See* Plea Agreement at ¶ 4(b), United States v. Crowley Liner Services, Inc., No. CR-12-590 (DRD), July 31, 2012 (Dkt. 10) (emphasis added). The fact that the Antitrust Division informed the Civil Division in 2013 that it did not have evidence that Crowley colluded to fix prices on government contracts should not have surprised defendant, given that Crowley pled guilty a year earlier to fixing rates charged to non-government customers only.

But even assuming *arguendo* that (1) the information disclosed on April 16, 2014 was *Brady* material, and (2) defendant had no notice of this information until that date, defendant

cannot show prejudice from the timing of these disclosures.  The government must disclose its *Brady* evidence sufficiently early so defendant can make use of its benefits.  *United States v. Misla-Aldarondo*, 478 F.3d 52, 63 (1st  Cir. 2007), *United States v. Osorio*, 929 F.2d 753, 758 (1st Cir. 1991); *United States v. Ingraldi*, 793 F.2d 408, 411-12 (1st Cir. 1986); *United States v. Stott*, 245 F.3d 890, 901 (7th Cir. 2001).

Several cases have held that a disclosure made <u>during</u> trial is sufficiently early for the defendant to make use of the information -- especially where, as here, defendant had some notice of that information.  *United States v. Mathur*, 624 F.3d 498, 506 (1st Cir. 2010) (no prejudice where defendant did not identify any plausible strategic option hampered or foreclosed by disclosure of potential exculpatory information during trial); *United States v. Rivera Calderón*, 578 F.3d 78, 93 (1st Cir. 2009) (no prejudice where disclosure of potential impeachment evidence during witness' testimony at trial did not prevent defense counsel from making effective use of material); *United States v. Van Anh*, 523 F.3d 43, 52 (1st  Cir. 2008) (impeachment material turned over on eve of trial did not prejudice defendant); *United States v. Todd*, 424 F.3d 525, 534 (7th Cir. 2005) (because defendant knew the content of psychiatric records, government's disclosure of records just a few days before trial was not basis for reversal); *United States v. Vega-Figueroa*, 234 F.3d 744, 750 (1st Cir. 2000) (no basis for reversal where defendant knew content of undisclosed photograph and opened door for its disclosure during trial); *United States v. Muñoz Franco*, 113 F.Supp.2d 224, 227, n.5 (D.P.R. 2000) ("late disclosure even as late as trial does not necessarily *per se* constitute a due process violation").

These disclosures were made on April 16, 2014, nearly five weeks before trial and several days before this Court's deadline of April 21, 2014 for providing all *Brady, Giglio,* and

*Kyles* material. (Dkt. 84). Because the information relates, at most, to defendant's lack of involvement in fixing the base rates (but not applicable surcharges) on federal government contracts, its only possible relevance is limited to calculating the volume of commerce affected by defendant's participation in the conspiracy – an issue addressed after trial, at sentencing.

Therefore, defendant has not, and cannot, make a showing of prejudice. The lack of demonstrable prejudice "sounds the death knell" for a delayed discovery request. *United States v. Sepulveda*, 15 F.3d 1161, 1178 (1st Cir. 1993).

**III.    Defendant is Not Entitled to the Relief Sought in his *Brady* Motion**

Defendant now has all information in the Antitrust Division's possession that could be considered *Brady* material relating to the Civil Division's decision not to intervene against Crowley. The Civil Division's files need not be searched because it is not a part of the prosecution team in this criminal case; it was neither consulted in connection with, nor provided any assistance whatsoever in, the criminal investigation leading to defendant's indictment. (Dkt. 97 at 8-9, citing law from the First Circuit and elsewhere limiting governmental disclosure obligations to personnel participating in the investigation and prosecution of case).

Defendant accuses the government of ignoring its own *Brady* Guidelines (Dkt. 101 at 2), as if those Guidelines set forth a different legal standard than the legal requirements imposed by case law and statute. But that is incorrect. The Guidelines cited by defendant, from a memorandum written in 2010 by then-Deputy Attorney General David Ogden, subsequently incorporated as Section 165 into the *United States Attorneys' Manual,* are clear that the guidance provided "is subject to legal precedent, court orders, and local rules."[4] Even if the Guidelines were intended to enunciate a new standard for discovery obligations, as the government

---

[4]  *See* Memorandum from David Ogden, Deputy Attorney General, to Dept. Prosecutors (Jan. 4, 2010), http://www.justice.gov/dag/discovery-guidance.html.

explained in its Opposition, the USAM does not have the force of law and does not create any enforceable rights to disclosure. (Dkt. 97 at 9 n.4 and accompany text). In any event, the government has complied with its legal obligations, and followed internal departmental guidance regarding discovery procedures and obligations, by reviewing and disclosing all documents and information in the possession of the prosecution team.[5]

Nor is the government obligated to search the same electronic production that the defendant himself has had for a year for evidence meeting his own definition of exculpatory under his theories of this case. (Dkt. 97 at 4-8). In his "Supplemental" Reply, filed on April 21, 2014, defendant argues at length that evidence of "competition" is exculpatory. But cheating on a price-fixing agreement does not disprove the existence of the unlawful agreement; one cannot cheat on an agreement unless there is an agreement in the first place. As the Seventh Circuit noted in *United States v. Beaver,* 515 F.3d 730 (7th Cir. 2008):

> [Defendant] asserts, however, that the concrete producers' occasional cheating on the discount limit shows that no agreement was ever reached. But this argument is illogical; certainly [he] would agree that a breach of contract does not mean that the parties never entered into the contract in the first place. And the argument is also beside the point because § 1 of the Sherman Antitrust Act does not outlaw only perfect conspiracies to restrain trade. It is not uncommon for members of a price-fixing conspiracy to cheat on one another occasionally, and evidence of cheating certainly does not, by itself, prevent the government from proving a conspiracy.

*Id.* at 739. *See also United States v. Andreas*, 216 F.3d 645, 679 (7th Cir. 2000) (cheating did not negate conspiracy); *United States v. Misle Bus & Equip. Co.,* 967 F.2d 1227, 1231 (8th Cir.1992) (occasional cheating does not negate mutual understandings).

---

[5] In his most recent filing, defendant argues that "the Antitrust Division is on the same team as the Antitrust Division" and that "the Antitrust Division is unquestionably wearing the same jersey as the Antitrust Division." (Dkt. 107 at 6). That much is true. But because defendant already has the information from the Antitrust Division's files, he is not entitled to further relief related to the *qui tam* action.

In his Supplemental Reply, defendant relies on *United States v. Bestway Disposal Corp.*, 724 F. Supp. 62 (W.D.N.Y. 1988), an unusual opinion written following a bench trial in a criminal antitrust case. But that case did not address *Brady* or other disclosure issues, so it does not support defendant's request for an order compelling the government to search the discovery production to find evidence supportive of defendant's theories. The court in *Bestway* did find sufficient evidence of competition by the defendants on trial to conclude that they did not enter into an unlawful agreement. *Id.* at 66-69. If the defendant in this case believes there is sufficient evidence of competition by Crowley to create reasonable doubt as to whether he entered into this price-fixing agreement, he has access to everything he needs to find it: Crowley's price data, Crowley's contracts, and other documents showing accounts Crowley took from the other Jones Act carriers during the 2005 to 2008 time period. Defendant is just as well suited – better, in fact – to find such evidence as is the government.

## **CONCLUSION**

Accordingly, defendant's Motion to Compel Compliance with *Brady* should be denied.

DATED: April 23, 2014            Respectfully submitted,

 /s/ Jon B. Jacobs
Craig Y. Lee, PR Attorney #G01208
Jon B. Jacobs, PR Attorney #G01508
Trial Attorneys, Antitrust Division
U.S. Department of Justice
450 5th St., NW Suite 11300
Washington, DC 20530
Tel: (202) 514-5012
Fax: (202) 514-6525
Email: jon.jacobs@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2014, a true and correct copy of the foregoing "UNITED STATES' RESPONSE TO DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S *BRADY* MOTION" was filed electronically and to the best of my knowledge, information and belief, counsel for defendant will be notified through the Electronic Case Filing System.

      /s/ Jon B. Jacobs
Jon B. Jacobs, PR Attorney #G01508
Trial Attorney
U.S. Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 11300
Washington, D.C. 20530
Tel.: (202) 514-5012
Fax: (202) 514-6525
Email: jon.jacobs@usdoj.gov