## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**
Plaintiff,

v.

Criminal Case No.  3:13-cr-00162-DRD

**THOMAS FARMER,**
Defendant.

## MOTION TO DISMISS THE INDICTMENT FOR FAILURE
## TO ALLEGE THAT PUERTO RICO IS A STATE

Dated: May 5, 2014

Terrance G. Reed (Pro Hac Vice)
V. Thomas Lankford (Pro Hac Vice)
LANKFORD & REED, PLLC
120 N. St. Asaph Street
Alexandria, VA  22314
(Phone) 703-299-5000
(Facsimile) 703-299-8876
tgreed@lrfirm.net
vtlankford@lrfirm.net

Joseph C. Laws (USDC-PR
Bar No. 120306)
239 Arterial Hostos Avenue, Suite 402
San Juan, PR 00918
(Phone) 787-754-7777
(Facsimile) 787-763-5223
lawofficesofjosephlaws@gmail.com

Mark Rosenblum (Pro Hac Vice)
MARK ROSENBLUM, P.A.
1300 Riverplace Boulevard, Suite 601
Jacksonville, FL 32207
(Phone) 904-396-6100
(Facsimile) 904-346-4481
mark@markrosenblumlaw.com

## TABLE OF CONTENTS

1. The Indictment Fails to Allege That
Puerto Rico is a State ………..……………………………..……….…..…..……... 2

    A.  The First Circuit Has Conclusively Held That Puerto Rico is Not a State …………... 4

    B.  The Justice Department Has Admitted That Puerto Rico is Not a State ……………. 7

    C.  Puerto Rico Is Not a State ……………..……………..……………..……………... 9

2. The Plain Language of Section 1 Bars
Its Application to Puerto Rico as a "State." ....…………………..…………………..…... 14

3. The Rule of Lenity Compels Application
of the First Circuit's Interpretation of
"several States." …………….……..…………….……..…………..………...…… 16

4. The Doctrine of Constitutional Avoidance
Compels Application of the First Circuit's
Interpretation of "several States." …………………………………..…….……...… 18

5. The Clear Statement Rule Requires Congressional Action to Make Puerto Rico a State ..... 21

6. The Indictment Fails to Allege a
Restraint "among the Several States." …………………………………...…………… 22

7. There is No Grand Jury Finding
that Puerto Rico is a State ………………………………..……….……..………. 23

    CONCLUSION …………………………………….……………...……................. 24

TABLE OF AUTHORITIES

**Page(s)**

# CASES

*Antilles Cement Corp. v. Fortuno*
      670 F.3d 310 (1st Cir. 2012 )……………………….……..……….…….…………..….. 15

*Bouie v. City of Columbia*
      378 U.S. 347 (1964) ………………………………….…….….……..……….……. 19, 20

*Central Bank of Denver v. First Interstate Bank of Denver*
      511 U.S. 164 (1994) …...……………………………….…….…..……….…..…….... 4, 11

*Clark v. Martinez*
      543 U.S. 371 (2005) ……………………………..………...……..……......……………. 19

*Cleveland v. United States*, 531 U.S. 12 (2000)…….………………………………………20

*Colon-Marrero v. Conty-Perez*
      703 F.3d 134 (1st Cir. 2012) ……………………….….…...…………………….. 15

*Cordova & Simompietri Ins. Agency v. Chase Manhattan Bank*
      649 F.2d 36 (1st Cir. 1981) …………………….….….……..….….……..……….. 10

*Crowell v. Benson*
      285 U.S. 22 (1932) …..……………………….….……..….…...……………………...…. 18

*Dunn v. United States*, 442 U.S. 100 (1979)…………….………………………..16, 17, 22, 24

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg and Constr. Trades Council*
      485 U.S. 568 (1988) ……..……………….…..…..…………………………..…….…... 18

*First Federal Sav. And Loan of Puerto Rico v. Ruiz de Jesus*, 644 F.2d 910 (1st Cir. 1981)……10

*Hamling v. United States*
      418 U.S. 87 (1974) …………………………….….…..……….…..……………………… 1

*Igartua De La Rosa v. United States*
      229 F.3d 80 (1st Cir. 2000) …………………………….…..….……...……………….……. 4

*Igartua De La Rosa v. United States*
      417 F.3d 145 (1st Cir. 2005) (*en banc*) ..……….…………….…..……………… *passim*

*Igartua v. Unites States*
32 F.3d 8 (1st Cir. 1994),
*cert. denied*, 514 U.S. 1049 (1995) …………………….....……………………… *passim*

*Igartua v. United States*
626 F.3d 592 (1st Cir. 2010), *rehearing en banc denied*,
654 F.3d 595 (2011), *cert. denied*, 132 S. Ct. 2376 (2012) …………..………. *passim*

*Jones v. United States*, 529 U.S. 848 (2000)……………………………………………… 21

*Kolender v. Lawson*
461 U.S. 352 (1983) ………………….……………………………………………… 22

*Lanzetta v. New Jersey*
306 U.S. 451 (1939) …………………….……………….…..……………………… 13

*Marks v. United States*, 430 U.S. 188 (1977)……………………………………………20

*McNally v. United States*
483 U.S. 350 (1987) …………………….……………….…..…..……………… 13, 21

*Muskat v. United States*
554 F.3d 183 (1ˢᵗ Cir. 2009) …………………….……….……...……………… 11

*Patterson v. McLean Credit Union*
491 U.S. 164 (1989) …………….……………………….….….…..……………… 11

*Pierce v. United States*
314 U.S. 306 (1941) …………………….………………..….…..…….....…….. 13, 14, 19

*Puerto Rico v. Shell*
302 U.S. 253 (1937) …………….…………….....……………..….…..………… 10

*Puerto Rico Dep't for Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495 (1988)………. 11

*Rogers v. Tennessee*
532 U.S. 451 (2001) …………….……….….………………..….…..…………… 20

*Russello v. United States*
464 U.S. 16 (1983) …………….……………………………….…..…….………… 23

*United States v. Bass*
404 U.S. 336 (1971) …………………….……………….…..……………..……….. 17, 21

*United States v. Craig,*
2014 WL 790865  (E.D. Ark. Feb. 26, 2014) …..……...…….….…..……… 17, 26

*United States v. Gradwell*
    243 U.S. 476 (1917) …………………..……………………………… 13, 17, 22, 24

*United States v. Godin*, 534 F.3d 5 (1st Cir. 2008)…..……………………………………15, 17

*United States v. Jin Fuey Moy*
    241 U.S. 394 (1916) ………………………………………..……...…………... 19

*United States v. Kattar*
    840 F.2d 118 (1st Cir 1988) …………………………..…………………………. 7, 8, 9

*United States v. Lanier*, 520 U.S. 259 (1997)……………………………………………..15, 16

*United States v. Medina-Ayala*
    906 F. Supp. 2d 20 (D.P.R. 2012) ……………………..…………….....…... 1, 3, 4, 14

*United States v. Mendez-Carrero*
    196 F. Supp. 2d 138 (D.P.R. 2002) ……………………………………………….... 1

*United States v. Ron Pair Enters., Inc.*
    489 U.S. 235 (1989) ………..………………………………………….... 4, 9, 14

*United States v. Sec. Industrial Bank*
    459 U.S. 70 (1982) ……………………………………….……………..………... 18

*United States v. United States Gypsum Company*
    438 U.S. 422 (1978) ……………………………………………………………... 12

*United States v. Vidal-Reyes*, 562 F.3d 43 (1st Cir. 2009)………………………………  15, 16

*Winters v. New York*
    333 U.S. 507 (1948) …………….…………………………………………... 11

## STATUTES and RULES

Fed. R. Crim. P. 12(b)(3) ……………………………………………….…….…………… 1

Fed. R. App. 35(a) …………………………………………….…………….…… 6

Fed. R. Evid. 801(d)(2)) …………………….…..………..……………………..………….…………… 7

Mann Act ………………………….…….…..………….……………………...….……… 1, 3, 14

Puerto Rican Federal Relations Act (FRA) …………………….…..………….……… 10

Sherman Act ……………………….….…....…….….…..…….….…..………….………… *passim*

## MISCELANEOUS

H. Packer, The Limits of the Criminal Sanction  (1968) …………………………………….. 16

**MOTION TO DISMISS THE INDICTMENT FOR FAILURE
TO ALLEGE THAT PUERTO RICO IS A STATE**

Defendant Thomas Farmer moves this Court pursuant to Fed. R. Crim. P. 12(b)(3) to

dismiss this case for defects in the Indictment and for lack of jurisdiction.  Specifically, the

Indictment should be dismissed because it fails to allege that Puerto Rico is a State, which is an

essential element for the section 1 violation of the Sherman Act alleged in this case.  An

indictment must allege all essential elements of the offense charged. *Hamling v. United States*,

418 U.S. 87, 117 (1974).  Failure to allege an offense is also a jurisdictional defect.  *United*

*States v. Mendez-Carrero*, 196 F. Supp. 2d 138, 141 (D.P.R. 2002).

The Indictment alleges a criminal violation of section 1 of the Sherman Act.  Enacted in

1890, section 1 of the Sherman Act prohibits:

> Every contract, combination in the form of trust or otherwise, or conspiracy, *in restraint
> of trade* or commerce *among the several States, or with foreign nations*, is declared to be
> illegal.

15 U.S.C. § 1 (emphasis added).

From the Indictment, it is clear that this case addresses maritime trade ("Puerto Rico

freight services") "*between the continental United States and Puerto Rico*."  Indictment, ¶ 1.

(Exhibit 10) (emphasis added).  But Puerto Rico is neither a "State" nor a "foreign nation" within

the scope of section 1.  Puerto Rico is a Commonwealth.  *See, e.g., United States v. Medina-*

*Ayala*, 906 F. Supp. 2d 20, 22 (D.P.R. 2012) (Mann Act applies to Puerto Rico because this 1910

statute later amended to add "commonwealth;" Puerto Rico is a commonwealth, not a State).

The Indictment must be dismissed for two defects regarding its allegations concerning

Puerto Rico: (i) it fails to allege that Puerto Rico is a State; and (ii) it fails to allege a restraint on

trade "among the several States."

1

Defendant respectfully disputes that the Commonwealth of Puerto Rico is a "State" within the scope of section 1 of the Sherman Act, and hence the Indictment should be dismissed. Longstanding First Circuit precedent, the admissions of the Justice Department,  and constitutional limitations on criminal prosecutions (including the lenity doctrine, the constitutional avoidance doctrine, and the clear statement rule)  all combine to require that section 1 be construed in accordance with its plain language as not including Puerto Rico.

Furthermore, even assuming that Puerto Rico could be a "State" for purposes of section 1 (which is disputed), there is no grand jury finding that "Puerto Rico freight services"—defined in the Indictment as "freight transported on water . . . between the continental United States and Puerto Rico"—constitutes a conspiracy to restrain trade "among the several States" for purposes of this essential element of section 1 of the Sherman Act.

### 1.  The Indictment Fails to Allege That Puerto Rico is a State

The Indictment does not allege that Puerto Rico is a "State," nor that Puerto Rico is "*among the several States"* that are subject to section 1 of the Sherman Act. Exhibit 1.  Instead, the Indictment alleges that the conspiracy was "carried out within the District of Puerto Rico." Indictment, ¶ 13.  The commerce at issue is identified as "Puerto Rico freight services" which is defined as "freight transported on water . . . between the continental United States and Puerto Rico." *Id.*, ¶ 1.[1]  The Indictment is expressly limited to a "conspiracy to suppress and eliminate competition by agreeing to fix rates and surcharges for Puerto Rico freight services." *Id.*, ¶ 5 (emphasis added).

---

[1] The Government has since represented that the "Florida 50/50" for which it seeks conspiratorial liability against Farmer involves the shipment of freight between Florida and Puerto Rico.  Docket No. 54, at 1.

2

At no point in the Indictment does it allege that Puerto Rico is a "State," either generally, or for purposes of satisfying the Sherman Act's requirement that the illegal conspiracy must be one to restrain commerce "among the several States."  The Indictment thus fails to allege this essential element of a Sherman Act offense.

At the time the Sherman Act was enacted (1890), of course, Puerto Rico was not a commonwealth, territory, or state of the United States.  Here, Congress has not amended the operative language of section one the Sherman Act to include commonwealths—it still only applies to trade "among the several States."  Congress has amended the Sherman Act at least eight times, but it has never changed the "several States" language of section one to mention or to include Puerto Rico within its ambit.[2]  That this was intentional is confirmed by the simultaneous enactment of section 3 of the Act in 1890, which prohibits the same conspiracies to restrain trade "in any Territory of the United States or of the District of Columbia" or "between" such Territories and any State.  15 U.S.C. § 3.

 Chief Judge Fusté of the United States District Court for Puerto Rico recently examined the history of the federal Mann Act to conclude that its plain language rendered it applicable to Puerto Rico.  *United States v. Medina-Ayala*, 906 F. Supp. 2d 20, 22 (D.P.R. 2012).  When the federal Mann Act was enacted in 1910 it was (like the Sherman Act) limited to interstate or foreign commerce.  906 F. Supp. 2d at 22.  After initially extending the Mann Act to any "territory or possession" of the United States, Congress went further in 1999 to extend the Mann Act to transportation "in any commonwealth."  *Id.*  Hence, Congress knows how to extend a

---

[2] See July 2, 1890, c. 647, § 1, 26 Stat. 209; Aug. 17, 1937, c. 690, Title VIII, 50 Stat. 693; July 7, 1955, c. 281, 69 Stat. 282; Dec. 21, 1974, Pub. L. 93-528§ 3, 88 Stat. 1708; Dec. 12, 1975, Pub. L. 94-145, § 2, 89 stat. 801; October 8, 1982, Pub. L.-97-290, 96 Stat. 1246; Nov. 16, 1990,  Pub. L. 101-588, § 4(a), 104 Stat. 2880; June 22, 2004, Pub. L.108-238, Title II, § 215(a), 118 Stat. 668.

criminal statute to Puerto Rico by adding the statutory term "commonwealth," but it has chosen

not to amend the Sherman Act to do so.  *Central Bank of Denver  v. First Interstate Bank*, 511

U.S. 164, 176-77 (1994) (because Congress enacted aiding and abetting liability in other statutes,

failure to do so in securities statute "resolves the case" that Congress intended not to do so).

As Chief Judge Fusté accurately ruled in *Medina-Ayala*:  "There is no question that

Puerto Rico is a commonwealth; it is not a state, nor is it a territory."  906 F. Supp. 2d at 22

(emphasis added).   In so ruling, Chief Judge Fusté acknowledged that the application of a statute

to Puerto Rico is a question of legislative intent, but that if a statute's language is plain, it

conclusively establishes legislative intent.  *Id., citing United States v. Ron Pair Enters., Inc*., 489

U.S. 235, 241-42 (1989).

### A.  The First Circuit Has Conclusively Held That Puerto Rico is Not a State

Before 2000, and at all times relevant to the alleged conspiracy in this case, the First

Circuit has repeatedly, unambiguously and emphatically held that Puerto Rico is not a State for

purposes of the Constitution.  *Igartua v. United States*, 626 F.3d 592 (1st Cir. 2010), *rehearing en*

*banc denied*, 654 F.3d 595 (2011), *cert. denied*, 132 S. Ct. 2376 (2012); *Igartua v. United State*s,

417 F.3d 145, 148 (1st Cir. 2005) (*en banc*) (noting that claims had already been "thrice rejected"

by First Circuit), *cert denied*, 547 U.S. 1035 (2006); *Igartua v. United States*, 229 F.3d 80 (1st

Cir. 2000); *Igartua v. Unites States*, 32 F.3d 8 (1st Cir. 1994), *cert. denied*, 514 U.S. 1049

(1995).[3]

---

[3]   In *Igartua De La Rosa v. United States*, 229 F.3d 80 (1st Cir. 2000) the First Circuit concluded
that  "this court held with undeniable clarity that the Constitution of the United States does not
confer upon United States citizens residing in Puerto Rico a right to participate in the national
election for President and Vice–President," and held that this prior First Circuit ruling construing
language providing that Electors are chosen "*by the States*" excludes Puerto Rico. 229 F.3d at 83

As the First Circuit ruled, "Statehood is central to the very existence of the Constitution, which distinguishes between states and territories. . . ." *Igartúa*, 626 F.3d at 596.  In particular, the First Circuit held that only by Congress amending the Constitution can Puerto Rico become a "State." *Igartúa*, 417 F.3d at 148 ("The path to changing the Constitution lies not through the courts but through the constitutional amending process, U.S. Const. art. V; and the road to statehood-if that is what Puerto Rico's citizens want-runs through Congress.  U.S. Const. art. IV, § 3, cl. 1.").

Specifically, the First Circuit ruled that it could not ignore the language of Article I, section 1, clause 2 of the Constitution restricting the right to vote for Congressmen to the "People of the several States" because this language was an "express limitation on representation" to the people "of the *several States*," which does not include the people of Puerto Rico.  626 F.3d at 595 (emphasis added).[4]  ("We reject Igartúa's argument that this text refers only to "People" and that we may ignore the express limitation on representation to "People *of the several States.*") (emphasis added by First Circuit).  The Court also focused on the language of Article I, section 1, clause 3 specifying that Congressman must be "apportioned among the several States which may be included in this Union." *Id.* at 596.

Concluding that the term "several States" is both "express" language and a "limitation" on Article 1, the First Circuit held it had no choice but to follow this limitation by denying Congressional voting rights to Puerto Rican residents.  626 F.3d at 595 ("The text of the

---

(emphasis of the First Circuit).  Because Congress had not since made Puerto Rico a state, the First Circuit dismissed claims for Presidential voting rights based on this earlier precedent. *Id.* at 83.

[4] While undersigned would count themselves among the rolls of Judge Torruella's dissent from *en banc* reconsideration of this ruling, 654 F.3d 99, 101, this ruling is nonetheless the law of this Circuit.

Constitution defines the term "State" and affords no flexibility as to its meaning. *The term is unambiguous . . . ."*) (emphasis added).

Accordingly, the First Circuit has already held that the "unambiguous" term "several States" within Article 1 compelled its ruling that Puerto Rico is not a State. 626 F.2d at 595. In later denying *en banc* reconsideration of this ruling, the First Circuit ruled that:

> The issues at the heart of this case have already received *en banc* review, and are not entitled to new review. Six years ago, this court did grant *en banc* review in *Igartua-De La Rosa v. United States*, 417 F.3d 145 (1ˢᵗ Cir. 2005) (*en banc*) (*Igartua III*), because of the importance of the issues, and that *en banc* decision controls the disposition of this petition for *en banc* review.

> We believe that *Igartua* III was correctly decided and no majority of this court can, in consequence, exist for any outcome other than the affirmance of dismissal of this case. Fed. R. App. 35(a), which disfavors grants of petitions for *en banc* review, does not allow continual *en banc* reviews to re-examine already settled issues.

654 F.3d at 100.

In other words, the *en banc* determination that Puerto Rico is not a State within the language of the Constitution, has since been construed as prohibiting any further re-consideration of the matter by a mere panel of the First Circuit. Given that the First Circuit has declared it "is not free to disregard the holdings of *Igartua III*," this Court cannot be in any different position. 626 F.3d at 603.

The *Igartua* majorities make clear that the only path to Statehood for Puerto Rico is through the political processes of Congress. *Igartua*, 417 F.3d at 148 ("the road to statehood-if that is what Puerto Rico's citizens want-runs through Congress."); *Igartua*, 626 F.3d at 597. Even rights as fundamental as the franchise must await express Congressional approval of Statehood, which has not been forthcoming. Given this century-old impasse in Congress, it is

simply not plausible that Congress, in 1890, would have intended to declare Statehood for Puerto Rico by means of using the term "several States" in section 1 of the Sherman Act.

Similarly, the *Igartua* opinions make clear that the judiciary's Article III authority does not authorize a judicial declaration of Statehood for Puerto Rico without a prior express grant from Congress by perfection of the processes for constitutional amendment. Moreover, the First Circuit has clearly held that federal courts lack jurisdiction to make Puerto Rico a "State." *Igartua*, 626 F.3d at 599 ("No constitutional text vests the power to amend or the power to create a new state in the federal courts. *No such power is granted to the courts by Article III, which creates and limits the jurisdiction of the federal courts*.") (emphasis added).

Congress has yet to act on Statehood for Puerto Rico and the Constitution precludes such a unilateral declaration by the judiciary. Under these circumstances, the Executive Branch fares no better than the people of Puerto Rico-- if the Antitrust Division wants section 1 of the Sherman Act to apply to Puerto Rico as one of the "several States," it must first secure the approval of Congress.

### B.  The Justice Department Has Admitted That Puerto Rico is Not a State

Moreover, these substantive rulings are not only the positions of the First Circuit, but of the Justice Department who advocated for them.  415 F.3d at 593 (counsel for Civil Division of Justice Department).  Hence, this is the formal admission of a party opponent in this case. *United States v. Kattar*, 840 F.2d 118, 130-31 (1st Cir 1988) (brief of Civil Division admissible in subsequent criminal case as statement of party opponent under Fed. R. Evid. 801(d)(2)).

In particular, the United States Solicitor General filed a brief with the Supreme Court in 2012 formally endorsing the substantive conclusions of the First Circuit in *Igartua* opinion, including its construction of the constitutional language of "several States" as being exclusive of

Puerto Rico.  Exhibit 2, at 7 (SG Opposition Brief) ("The Constitution provides that '[t]he House of Representatives shall be composed of Members chosen every second Year by the People of the several *States*.' U.S. Const. Art. 1, § 2, Cl.1.  The Framers expressly distinguished between 'States' and Territor[ies],' *see* id., Art. IV, § 3, and reserved to 'the People of the several States' alone the right of representation in the House.") (emphasis provided by SG).  Accordingly, the Solicitor General agreed with the First Circuit that the term "several States" expressly excludes Puerto Rico from the voting rights enjoyed by the "People of the several States."

After endorsing this construction of "several States" as a limiting term, as had been adopted by the First Circuit," the Solicitor General went on to reject claims of "de facto Statehood" for Puerto Rico:

> [N]either this Court nor the court of appeals has concluded that Puerto Rico *is* a State under the Constitution. Nor has any court of appeals suggested that the Commonwealth is entitled to claim the most fundamental prerogative of statehood: electoral representation in the government of the United States. The Framers did not anticipate that the federal courts would decide, under any rubric of *de facto* or functional statehood, whether a particular territory should be entitled to claim the privileges of membership in the Union. The Constitution commits that quintessentially political question to Congress.

Exhibit 2, at 8.

The issue is not whether the Defendant supports the Solicitor General's denial of voting rights for Puerto Rico residents—he doesn't.  The issue is whether the Solicitor General, as a party opponent of the Defendant in this case, has admitted through his representations to the Supreme Court that term "several States" is plainly, unambiguously, and "logically," exclusive of Puerto Rico.[5]  As the First Circuit held in *Kattar*: "Whether or not the entire federal

---

[5]   The Solicitor General also rejected the contention that the majority opinion in *Igartua* about Congressional elections was not compelled by the earlier *en banc* ruling in *Iguarta* regarding presidential elections.  "Nor did the court fail to appreciate the distinction under the Constitution between presidential and congressional elections. The court  simply recognized that its holding in

government in all its capacities should be deemed a party-opponent in criminal cases, the Justice Department certainly should be considered such." 840 F.2d at 130. The *Kattar* opinion held that court filings of the Justice Department are party admissions under Rule 801(d)(2)(B) because the "Justice Department here has, as clearly as possible, manifested its belief in the substance of the contested documents; it has submitted them to other federal courts to show the truth of the matter contained therein." The Justice Department has admitted that the term "several States" is restricted to States, and this admission applies equally to this language in section 1 of the Sherman Act.

### C.  Puerto Rico Is Not a State

For constitutional purposes, therefore, Puerto Rico is not a State. The same conclusion must apply to section 1 of the Sherman Act which uses the same language. *Compare* U.S. Const'n Article 1, § 2 cl. 1 (Members chosen by "the People of the several States") and cl. 2 (Representatives apportioned "among the several States") *with* 15 U.S.C. § 1 (addressing restraints on trade "among the several States'). If the constitutional language "of the several States" is an express textual limitation excluding Puerto Rico that cannot be ignored by the First Circuit, then the statutory term "among the several States" must be susceptible to the same limiting interpretation. Unambiguous statutory language must be given effect. *Medina-Ayala*, 906 F. Supp. 2d at 22, *citing United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241-42 (1989).

---

*Igartua III* that the Commonwealth is not a "State" for purposes of appointing presidential electors, *see* 417 F.3d at 148, *logically required the conclusion that the people of Puerto Rico are not among "the People of the several States" under Article* I. *Se*e 626 F.3d at 597." Exhibit 2, at n.6 (emphasis added).

In 1937, the Supreme Court held that Puerto Rico was a "Territory" subject to section 3 of the Sherman Act. *Puerto Rico v. Shell*, 302 U.S. 253 (1937). Obviously, the option of declaring Puerto Rico a "State" subject to the similar substantive provisions of section 1 was available to the *Shell* Court, but the Supreme Court did not avail itself of this option, and after the First Circuit's *Igartua* precedent it seems absolutely clear that Congress would be the only Branch who could make Puerto Rico a "State."    In any event, the Indictment states no claim under section 3 of the Sherman Act. Nor does the Indictment allege that the Commonwealth of Puerto Rico is a territory.

In 1981, the First Circuit grappled with this issue in the civil context in *Cordova & Simompietri Ins. Agency v. Chase Manhattan Bank*, 649 F.2d 36 (1st Cir. 1981). In *Cordova*, the First Circuit held that the express language of section 3 of the Act, limited on its face to territories, does not apply to Puerto Rico. *Id.* at 41. In reaching this opinion, the *Cordova* opinion took account of the fact that Congress, in 1952, recognized Puerto Rico as a "Commonwealth" with its 1952 enactment of the Puerto Rican Federal Relations Act (FRA), 64 Stat. 319. The First Circuit held that, by changing Puerto Rico's relationship from a territory to a Commonwealth to end its subordinate status to Congress, Congress made section 3 of the Sherman Act inapplicable to Puerto Rico. *Id*. at 41. *Accord*, *First Federal Sav. and Loan of Puerto Rico v. Ruiz de Jesus*, 644 F.2d 910, 911 (1st Cir. 1981) (Puerto Rico's territorial status ended in 1952 when it became a Commonwealth).

The *Cordova* opinion went on to offer that "it is fair to assume that the framers of the Sherman Act, had they been aware of the FRA and subsequent Constitutional developments, would have intended that Puerto Rico be treated as a "state" under the Act, once Commonwealth

status was achieved." *Id*. at 42.[6]  The purpose of this language in *Cordova* is to explain why,

post-FRA, Puerto Rico possessed "state-like autonomy" over its own affairs (*id.*), including the

ability independently to develop its own local antitrust laws.  *Id*. at 41.   The *Cordova* opinion's

rejection of Puerto Rico's continued status as a "territory" under section 3 was thus bottomed on

its demand for "specific evidence" from Congress "to demonstrate a statutory intent to intervene

more extensively into the local affairs of post-Constitutional Puerto Rico than into the local

affairs of a state." *Id*. at 42.

 The *Cordova* ruling that Commonwealth of Puerto Rico is not a territory with the

meaning of section 3 remains good First Circuit law.   Its dicta about including Puerto Rico being

a state under section 1,even if it were a holding,  has been overruled by several First Circuit

opinions (the aforementioned *Igartua* opinions) holding unequivocally that Puerto Rico is not

one of the "several States."  *See, e.g*., *Muskat v. United States*, 554 F.3d 183,189 (1ˢᵗ Cir. 2009)

(*en banc* rulings constitute "supervening" authority over panel opinions).  As the *Igartua*

opinions make clear, "state-like autonomy" does not make Puerto Rico a state.

 In any event, the *Cordova* court did not, as does this Court, confront an attempt to apply

section 1 to Puerto Rico in a criminal prosecution.  The Supreme  Court, has long held that: "The

standards of certainty in statutes punishing for offenses is higher than in those depending

primarily upon civil sanction for enforcement." *Winters v. New York*, 333 U.S. 507, 515 (1948).

The Sherman Act, of course, has both a civil and a criminal reach, but the Supreme Court has

held when Congress enacted the Sherman Act it fully intended to maintain the distinctions

---

[6] But the Supreme Court has since held that "'Congressional inaction cannot amend a duly
enacted statute.'" *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S.  164, 186
(1994)(citing and quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 175 n.1 (1989)).
Further, "unenacted approvals, beliefs, and desires are not laws." *Puerto Rico Dep't for
Consumer Affairs v. Isla Petroleum Corp*., 485 U.S. 495, 501 (1988).

between criminal and civil offenses.  *United States v. United States Gypsum Company*, 438 U.S. 422, 443 n.19 (1978).

Initially, the *Cordova* opinion has been eclipsed by the subsequent *Igartua en banc* opinion, which has been construed as consistent with prior First Circuit precedent and as precluding any subsequent First Circuit panel from construing the plain language of the term "several States" in the Constitution as encompassing Puerto Rico.  In fact, when the Puerto Rico Government argued to the First Circuit that Puerto Rico should be treated as the "functional equivalent" of a State, the First Circuit rejected this contention on the ground that it is "refuted by a plain reading of the text of the Constitution."  626 F.3d at 599.

Accordingly, a "plain reading" of the "unambiguous" text of section 1 of the Sherman Act compels the conclusion that Puerto Rico is not among the "several States" to which it applies.  Further, the *Igartua* opinions (joined by the Solicitor General) clearly identify the only path through which Puerto Rico can attain Statehood status—the Constitutional Amendment process—and not by means of judicial interpretation.  417 F.3d at 148 ("The path to changing the Constitution lies not through the courts but through the constitutional amending process").  To the extent the *Cordova* opinion departed from these subsequent *en banc* rulings, it is no longer valid.

Furthermore, and with all due respect to the *Cordova* civil opinion (written by then-Judge Breyer), criminal statutes are not subject to judicial amendment based upon guesses about what statute a prior Congress might have enacted  if it were to be confronted with unforeseen subsequent developments.  This would violate not only the principle of lenity, under which

12

ambiguous criminal statutes are literally and narrowly construed,[7] it would violate the Due Process Clause.

In *Pierce v. United States*, 314 U.S. 306 (1941), for example, the Supreme Court reversed a defendant's conviction for impersonating a government officer because the criminal statute charged, at the time of the offense, did not expressly include officers of government corporations, including those of the Tennessee Valley Authority at issue.  Noting that the criminal statute was passed in 1884 "before the United States owned or controlled corporations," and it and other statutes had been amended after the alleged offense to include such government corporations, the Court noted that the statute did not include such language at the time of the offense.  314 U.S. at 239-40.  Recognizing that Congress could expand the statute's reach to officers of government corporations, the Court held that "a comparable judicial enlargement of a criminal act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate definiteness."  *Id*., *citing Lanzetta v. New Jersey*, 306 U.S. 451 (1939) (statute criminalizing "gangsters" violates Due Process vagueness doctrine). The *Pierce* opinion held that it could not depart from the plain language of a criminal statute, and while language could be found in other criminal offenses extending them to government corporations, none was present in the statute in question, leaving the Court to conclude: "This pointed omission is indicative of intention."  *Pierce*, 314 U.S. at 240.

Here, the initial question is the same as in *Pierce*:  Did the enacting Congress include the conduct within the statute, that is, did Congress in 1890 include Puerto Rico within section 1 of the Act?  No.  Did Congress subsequently amend section 1 to include Puerto Rico?  No.   Under

---

[7]  *See, e.g*., *McNally v. United States*, 483 U.S. 350, 359-60 (1987); *United States v. Gradwell*, 243 U.S. 476, 485 (1917).

these circumstances, can a court judicially enlarge section 1 by interpretation to include Puerto

Rico?  No. *Pierce*, 314 U.S. at 239-40.

As Chief Judge Fusté pointed out in *Medina-Ayala*, when Congress extended the reach of

the Mann Act to Puerto Rico it did so by amending the statute first to include territories, and then

to include the term "Commonwealth."  Until and unless Puerto Rico becomes a "State," the plain

language of section 1 does not reach it for purposes of criminalizing conduct under that section.

Similarly, because Puerto Rico became a "Commonwealth" in 1952, it is no longer a "territory"

subject to section 3.  *Medina-Ayala*, 906 F. Supp. 2d at 22 ("There is no question that Puerto

Rico is a commonwealth; it is not a state, nor is it a territory) (emphasis added).


**2. The Plain Language of Section 1 Bars Its Application to Puerto Rico as a "State."**

Most assuredly, the plain meaning doctrine requires statutes to be construed in

accordance with *their plain language. Medina-Ayala*, 906 F. Supp. 2d at 22 *(*statutes construed

as written, citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241-42 (1989)).  Here,

section 1 is inapplicable because Puerto Rico is not a State.  Similarly, section 3 is also

inapplicable because Puerto Rico is a "Commonwealth," and is no longer a Territory.  *Medina-*

*Ayala*, 906 F. Supp. 2d at 22.  Indeed, the fact that Congress amended the Mann Act to include

coverage of Puerto Rico as a "Commonwealth," demonstrates that Congress knew how to do so.

The absence of such a term in sections 1 and 3 of the Sherman Act is dispositive: "This pointed

omission is indicative of intention."  *Pierce*, 314 U.S. at 240.

The First Circuit sitting *en banc* has left no doubt that the term "several States:" (i) is an

"express limitation" excluding Puerto Rico (*Igartua*, 626 F.3d at 596); (ii) is "unambiguous"

language (*id.* at 595-96); (iii) cannot be ignored as an express exclusion of Puerto Rico (*id.* at

596), and (iv) must be "plainly read" as excluding Puerto Rico. *Id.* at 599. The First Circuit has afforded the term "several States" about every designation available under the plain meaning doctrine to make clear that courts within this Circuit cannot look behind this language for any meaning other than it excludes Puerto Rico. In this Circuit: "'If the meaning of the text is unambiguous, our task ends there as well.'" *United States v. Vidal-Reyes*, 562 F.3d 43, 50 (1st Cir. 2009), quoting *United States v. Godin*, 534 F.3d 51, 56 (1st Cir. 2008).

Even in the civil arena, the First Circuit has since *Cordova* exhibited greater reliance upon the plain meaning doctrine of statutory construction in determining the application of federal statutes to Puerto Rico. In *Antilles Cement Corp. v. Fortuno*, 670 F.3d 310 (1st Cir. 2012), for example, the First Circuit literally construed a statute which expressly referred to Puerto Rico as one which applies to Puerto Rico. In so holding, the First Circuit found support in the fact that this statutory language had survived multiple statutory amendments; and rejected the suggestion that the passage of the FRA constituted an implied statutory repeal. *Id*. at 322. The same observations can be made as to section 1 of the Sherman Act. Indeed, the *Fortuno* opinion pointed out that the *Cordova* opinion "recognized that Puerto Rico is not a State." *Id*.

While the express inclusion of "Puerto Rico" in a statute compelled the First Circuit in *Fortuno* to include Puerto Rico within its reach, the absence of a statutory reference to Puerto Rico led to the opposite result in *Colon-Marrero v. Conty-Perez*, 703 F.3d 134 (1st Cir. 2012). In *Colon-Marrero*, the First Circuit held the Voting Rights Act inapplicable to Puerto Rico based upon the lack of a statutory reference to Puerto Rico. 703 F.3d at 137. In addition, the *Colon-Marrero* opinion held that the "default rule" of 48 U.S.C. § 734 generally extending United States law to Puerto Rico is inapplicable where Congress does not intend to include Puerto Rico within a statute's coverage. *Id.* at 137 n.5. Here, the First Circuit has repeatedly held that the

15

use of the term "several States" unambiguously excludes Puerto Rico. *Igartua*, 626 F.3d at 595-96. Only Congress has the power to recognize Puerto Rico as a State, which it has not exercised. 417 F.3d at 148. Under these circumstances, it would be inconsistent to construe the term "several States" as enacted in section 1 in 1890 as memorializing Congressional intent that Puerto Rico be included "among the several States."

### 3. The Rule of Lenity Compels Application of the First Circuit's Interpretation of "several States."

The plain meaning doctrine requires unambiguous statutes to be enforced as written, and the First Circuit's unequivocal interpretation of the term "several States" as unambiguous should end the inquiry into legislative intent. *Vidal-Reyes*, 562 at 50 ("If the meaning of the text is unambiguous, our task ends there as well."). But even if it were possible to defy these First Circuit rulings, and to consider including Puerto Rico as falling within the scope of the "several States" in section 1, this would simply trigger application of the lenity doctrine.

The lenity doctrine is based upon Fifth Amendment Due Process protections, it has been called the "'junior version of the vagueness doctrine,'" and it "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (quoting H. Packer, The Limits of the Criminal Sanction 95 (1968)). As such, the lenity doctrine is not "merely a convenient maxim of statutory construction," but rather is rooted in fundamental Due Process principles. *Dunn v. United States*, 442 U.S. 100, 112 (1979).

Significantly here, one of the Due Process values that the doctrine of lenity protects is: "To ensure that a legislature speaks with special clarity when marking the boundaries of criminal conduct, courts must decline to impose punishment for actions that are not "'plainly and

unmistakably'" proscribed. *Dunn,* 442 U.S. at 112-13, *quoting United States v. Gradwell*, 243 U.S. 476, 485 (1917) (Holmes, J.).  This Due Process principle requiring special clarity from Congress is especially implicated in this case in light of the First Circuit's long-held precedent expressly confining to Congress the constitutional authority to recognize Puerto Rico as a State.

Under the lenity doctrine, "grievously" ambiguous criminal statutes are construed narrowly such that a defendant obtains the benefit of the narrower reasonable construction. *Godin,* 534 F.3d at 56.  "'A statute is ambiguous only if it admits of more than one reasonable interpretation.'" *Id.*, *quoting Gen. Motors Corp. v. Mellon Fin. Servs. Corp.*, 67 F.3d 1021, 1025 (1st Cir. 1995).  In *Godin*, for example, the First Circuit held that a "grievous ambiguity" (i.e., one not removed by application of statutory construction principles) existed with respect to the *mens rea* level of a federal identity theft statute, and this ambiguity compelled application of the lenity doctrine to require the more demanding level of *mens rea*.  *Godin*, 534 F.3d at 61 (reversing conviction for instructional error and insufficiency of evidence as to the more demanding *mens rea* level).

If an ambiguous criminal statute is susceptible to two or more reasonable interpretations, a court is obligated to construe the statute in the manner favoring the defendant (here, that "several States" in section 1 does not include Puerto Rico). *United States v. Bass*, 404 U.S. 336, 347-48 (1971); *Godin*, 534 F.3d at 61; *United States v. Craig*, 2014 WL 790865, *6 (E.D. Ark. February 26, 2014) (lenity requires acquittal of defendant because criminal statute subject to two reasonable interpretations, requiring application of one in defendant's favor).

Because the First Circuit, in panel opinions and sitting *en banc*, has consistently construed the term "several States" since 2000 as unambiguously excluding Puerto Rico, it would be difficult for a trial court within the First Circuit to characterize this First Circuit plain

17

meaning interpretation of this language as an unreasonable interpretation.  *See, e.g., Igartua*, 626 F.3d at 604 (holding that subsequent panel is bound by prior *en banc Igartua* opinion because *stare decisis* requires that "a legal decision rendered by a court will be followed by all courts inferior to it in the legal system.").  As a result, within this Circuit, construction of the term "several States" will always include, as a reasonable interpretation, the prospect that Congress intended to exclude Puerto Rico from the reach of the statute.  *Igartua*, 626 F.3d at 604.  Hence, under the principle of lenity, this Court must admit that the First Circuit's consistent construction of the "plain language" of "several States" as excluding Puerto Rico is a sufficiently reasonable interpretation to afford Defendant its benefit under the lenity doctrine.

### 4. The Doctrine of Constitutional Avoidance Compels Application of the First Circuit's Interpretation of "several States."

The same result is also reached by application of the constitutional avoidance doctrine. Under that doctrine, courts must construe statutes so as to avoid creating a substantial constitutional question. *United States v. Sec. Industrial Bank*, 459 U.S. 70, 78 (1982) (citing and quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg and Constr. Trades Council*, 485 U.S. 568, 575 (1988). Under this doctrine, a "statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score."  *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916) (Holmes, J.).

The constitutional avoidance doctrine "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts."  *Clark v. Martinez*, 543 U.S. 371, 381 (2005).   Applied here, it would dictate construing the term "several States" in

section 1 of the Sherman Act in a manner consistent with the First Circuit's construction of the same language in the *Igartua* opinions—i.e., as intentionally excluding the Commonwealth of Puerto Rico.

From before 2005 to the present, the First Circuit has conclusively construed the term "several States" as excluding Puerto Rico for constitutional purposes. Furthermore, it has unequivocally identified Congress, and not the courts, as the *only* Branch of Government that can change this status. Hence, it is only Congress that can change Puerto Rico's status from that of a Commonwealth to a State, and as the First Circuit has repeatedly held, Congress has yet to do so. In so holding, the First Circuit has consistently rejected the prospect that it, as a federal appellate court, has the authority to make Puerto Rico a state. To construe this same language as commanding the opposite result (i.e., permitting this Court to determine that Puerto Rico is one of "several States"), would cast serious doubt on the consistent and unequivocal contrary constitutional rulings of the First Circuit.

In addition, neither the Government, nor the judiciary, can retroactively change this binding precedent for purposes of expanding criminal law after the conduct at issue. *Pierce*, 314 U.S. at 239-40. The Due Process Clause prohibits a retroactive expansion of a criminal offense by a court. *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964) (vacating trespass convictions of African American college students for sitting at drugstore lunch counter). As the Supreme Court stated in *Bouie*:

> [A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Article 1, § 10 of the Constitution forbids. An ex post facto law has been defined by this Court as one 'that makes an action done before passing of the law, and which was innocent when done, criminal; . . . If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

378 U.S. at 353.  While the Supreme Court subsequently labeled this language "dicta" with respect to the Ex Post Facto clause, it has consistently reaffirmed that this language accurately characterizes the Due Process Clause's prohibition on retroactive judicial expansion of a criminal statute because it deprives a defendant of fair warning.  *Rogers v. Tennessee*, 532 U.S. 532 U.S. 451, 462 (2001); *Marks v. United States*, 430 U.S. 188, 192 (1977) (citing and quoting *Bouie*, due process "right is protected against judicial action").  In other words, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope."  *Lanier*, 520 U.S. 259, 266 (1997) (quoting *Bouie*).  *See United States v. Carrigan*, 724 F.3d 39, 49 (1st Cir. 2013) ("*Lanier* stands for the proposition that the due process clause bars the application of a novel construction of a statute where the scope of the statute is ambiguous.").

Here, because the term "several States" has been conclusively construed by the First Circuit since at least 2000 as not including Puerto Rico, it cannot be construed today to mean the opposite by retroactive judicial construction in a criminal case without running afoul of the Due Process Clause.  Further, because the First Circuit's plain meaning interpretation of "several States" as exclusive of Puerto Rico must be deemed reasonable, any alternative proposed interpretation (assuming that an ambiguity can be unearthed to justify departing from this language's plain meaning) must give way under the lenity doctrine to the First Circuit's consistent interpretation of this term as excluding Puerto Rico.

   5. **The Clear Statement Rule Requires Congressional Action to Make Puerto Rico a State.**

The Supreme Court has recognized that the Due Process Clause imposes a clear statement rule upon Congress when it enacts criminal statutes because of their possible

encroachment upon the police powers of States who also regulate conduct through criminal sanctions. *See, e.g.*, *Cleveland v. United States*, 531 U.S. 12, 24-25 (2000); *United States v. Bass*, 404 U.S. 336, 349-350 (1971). The clear statement rule is derived from both the lenity doctrine and the doctrine of constitutional avoidance. *Bass*, 404 U.S. at 349-50 (constitutional avoidance); *Jones v. United States*, 529 U.S. 848, 858 (2000) (lenity). "The Court has often stated that when there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher *only when Congress has spoken in clear and definite language*." *McNally v. United States*, 483 U.S. 350, 359-60 (1987) (emphasis added).

The clear statement rule compels Congress to address the proper scope of criminal statutes, rather than the judiciary. *Bass*, 404 U.S. at 348 -49 ("legislatures, and not courts, should define crimes;" "the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision"). Here, Congress did not include Puerto Rico as a "State" within section 1 when it was enacted in 1890. In the subsequent century, Congress did not amend the operative language of section 1 to include Puerto Rico, nor did it take action to make Puerto Rico a "State." Under the clear statement rule, this Court should demand "clear and definite language" from Congress demonstrating that it intended to include Puerto Rico "among the several States" for purposes of section 1 of the Sherman Act, before permitting such a prosecution.

The circumstances warranting application of the clear statement rule are present here. Puerto Rico enjoys "state-like autonomy," including over the development of its own antitrust and criminal laws. *Cordova*, 649 F.2d at 42. Further, the Commonwealth of Puerto Rico fully exercises police power over its citizens, including through the enforcement of criminal offenses and the regulation of trade. Absent a clear contrary statement from Congress, Congress must

respect Puerto Rico's autonomy to develop its own trade regulation regime, and its own criminal justice regime. *Id*. If Congress wants to make Puerto Rico a State, either generally or for purposes of section 1 of the Sherman Act, it knows how to do so. It hasn't.

Indeed, the First Circuit has repeatedly held that the only path to making Puerto Rico a "State" is through Congress. *Iguartua*, 417 F.3d at 148 ("The path to changing the Constitution lies not through the courts but through the constitutional amending process, U.S. Const. art. V; and the road to statehood-if that is what Puerto Rico's citizens want--runs through Congress"). Most assuredly, it is not within the authority of Antitrust Division, to make Puerto Rico a State.

Similarly, with Congress holding a virtual monopoly on the recognition of Statehood for Puerto, it should be not be an onerous burden for Congress to comply with the requirement of Due Process "[t]o ensure that a legislature speaks with special clarity when marking the boundaries of criminal conduct," *Dunn*, 442 U.S. at 112. It is this Court's task to enforce the demands of Due Process by "declining to impose punishment for actions that are not "'plainly and unmistakably' proscribed" by Congress. *Dunn*, 442 U.S. at 112-13, quoting *United States v. Gradwell*, 243 U.S. 476, 485 (1917) (Holmes, J.).

Finally, the void for vagueness doctrine of the Due Process Clause prohibits retroactively expanding section 1 to include Puerto Rico when the First Circuit has consistently ruled that Puerto Rico is not among the "several States." *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983); *Dunn*, 442 U.S. at 112-13.

### 6. The Indictment Fails to Allege a Restraint "among the Several States."

The trade at issue in this case is defined as freight services "between the continental United States and Puerto Rico." Indictment, ¶ 1. But the Sherman Act prohibits conspiracies to

restrain trade "among the several States."  15 U.S.C. § 1.  Because Puerto Rico is not a State, trade between Puerto Rico and the continental United States is not trade "among the several States."

Furthermore, the statutory use of the term "among" (versus between) connotes trade between more than just two States.  In grammar, for example, the term between refers to two entities, while the term "among" refers to more than two entities.  Here, the statutory reference to trade "among the several States" is therefore a reference to trade flowing through three or more states.  In section 3, for example, Congress used the term "between" to refer to trade between a Territory and "any State or States."  15 U.S.C. § 3.  Again, Congress knew how to use the term "between" to cover trade flowing between a territory and a "State or States."  15 U.S.C. § 3.  The absence of such trade "between" language in section 1, and the presence of the different language in section 1 specifying trade "among the several States," has interpretive significance.  *Russello v. United States*, 464 U.S. 16, 23 (1983) (when terms present in one subsection and absent in another, it "is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion").   The Indictment allegation of trade "between the continental United States and Puerto Rico" falls outside of section 1 for failure to allege that the trade at issue is among at least three "States."

**7.  There is No Grand Jury Finding that Puerto Rico is a State.**

Finally, there is no grand jury finding in the Indictment that the trade at issue ("between the continental United States and Puerto Rico") is trade "among the Several States."  Thus, even assuming that a grand jury (as opposed to Congress) can make such finding, it did not happen here.

Nor is this an auspicious case in which to attempt to read the mind of grand jurors on this point. While statehood for Puerto Rico has strong-minded proponents and opponents, they can all at least agree that Puerto Rico is not yet a State.  Hence, the outcome of a grand jury vote on whether maritime freight services between Puerto Rico and the continental United States is commerce "among the several States" for Sherman Act purposes, is certainly subject to doubt.

The First Circuit's *en banc* denial of voting rights for Puerto Rico residents, under authority of the "several States" language in the Constitution, left no doubt that only Congress has constitutional authority to make Puerto Rico a "State."  Similarly, with Congress holding this virtual monopoly on the recognition of Statehood for Puerto, it should be not be too burdensome for Congress to fulfill the requirements of Due Process.  "To ensure that a legislature speaks with special clarity when marking the boundaries of criminal conduct, courts must decline to impose punishment for actions that are not "'plainly and unmistakably'" proscribed.  *Dunn*, 442 U.S. at 112-13, quoting *United States v. Gradwell*, 243 U.S. 476, 485 (1917) (Holmes, J.).

This ruling also places in substantial constitutional doubt whether this is a determination that can be made by a grand jury—a constitutional entity to be sure, but not one charged with the constitutional responsibility for admitting States.  Again, the constitutional avoidance doctrine militates in favor of avoiding the significant constitutional issues arising from any claim by the Government that the grand jury made Puerto Rico a state for purposes of this case.

## Conclusion

For the foregoing reasons, the Indictment must be dismissed.

24

Respectfully submitted,


Dated: May 5, 2014                    By: */s/*  Terrance G. Reed
                                      By: /s/  V. Thomas Lankford
                                      Terrance G. Reed (Pro Hac Vice)
                                      V. Thomas Lankford (Pro Hac Vice)
                                      Lankford & Reed, PLLC
                                      120 N. St. Asaph Street
                                      Alexandria, VA  22314
                                      (Phone) 703-299-5000
                                      (Facsimile) 703-299-8876
                                      tgreed@lrfirm.net
                                      vtlankford@lrfirm.net


                                      By: /s/  Mark Rosenblum
                                      Mark Rosenblum (Pro Hac Vice)
                                      Mark Rosenblum, P.A.
                                      1300 Riverplace Boulevard, Suite 601
                                      Jacksonville, FL 32207
                                      (Phone) 904-396-6100
                                      (Facsimile) 904-346-4481
                                      mark@markrosenblumlaw.com


                                      By: /s/  Joseph C. Laws
                                      Joseph C. Laws
                                      (USDC-PR Bar No. 120306)
                                      239 Arterial Hostos Avenue, Suite 402
                                      San Juan, PR 00918
                                      (Phone) 787-754-7777
                                      (Facsimile) 787-763-5223
                                      lawofficesofjosephlaws@gmail.com

                                      *Counsel for Defendant Thomas Farmer*

## CERTIFICATE OF SERVICE

I hereby certify on the 5th day of May, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig Y. Lee, PR Attorney #G01208
Jon B. Jacobs, PR Attorney #G01508
Trial Attorneys
U.S. Department of Justice
Antitrust Division
National Criminal Enforcement Section
450 5th St., NW Suite 11300
Washington, DC 20530
Tel: (202) 307-6694
Fax: (202) 514-6525
Email: jon.jacobs@usdoj.gov

By: /s/ Terrance G. Reed (Pro Hac Vice)
LANKFORD & REED, PLLC
120 N. St. Asaph Street
Alexandria, VA  22314
(Phone) 703-299-5000
(Facsimile) 703-299-8876
tgreed@lrfirm.net