IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**United States of America**
Plaintiff

v.

**Thomas Farmer**
Defendant

Criminal No. 13-0162 (DRD)

**OPINION AND ORDER**

Thomas Farmer ("Defendant") is charged with violating the Sherman Act, specifically 15 U.S.C. § 1, by engaging in a combination and conspiracy to suppress and eliminate competition by agreeing to fix rates and surcharges for Puerto Rico freight services. (Docket No. 1). Defendant, armed with a multitude of creative legal arguments, moves the Court to dismiss the instant indictment. (Docket Nos. 117, and 146). The aforementioned legal arguments all converge on one main idea: Defendant could not have infringed upon the Sherman Act because Puerto Rico is neither a "state," "territory," nor "foreign nation." For the reasons elucidated in the instant order, the Court hereby **DENIES** Defendant's motions.

The Court begins – and ends – the analysis of the instant motions with a discussion of the judicial history and legal precedents in place regarding the application of the Sherman Act to the Commonwealth of Puerto Rico. The evolution of the political relationship between Puerto Rico and the United States plays a key role in the analysis of the instant controversy. The First Circuit, in Trailer Marine Transport Corp. v. Rivera Vazquez, 977 F.2d 1, 6-7 (1st Cir. 1992), concisely expounded upon the historical relationship between both countries:

> Puerto Rico was acquired by the United States from Spain in 1898 by the Treaty of Paris and became subject to Congress' plenary authority under the Territorial Clause of the Constitution. U.S. Const. art. IV, § 3, cl. 2 ("The Congress shall have Power to ... make all needful Rules and Regulations respecting the Territory ... belonging to the United States."). Then, over a half century, Puerto Rico's autonomy increased in stages, its relationship with the federal government being governed successively by the original Foraker Act, 31 Stat. 77 (1900); then by the Organic Act of 1917, also known as the Jones Act, 39 Stat. 951 (1917); and finally by federal statutes in 1950 and 1952 that established Puerto Rico's present status in accordance with the legislation, a referendum and ultimately a Puerto Rican Constitution approved by the people of Puerto Rico and by Congress. *See* Cordova & Simonpietri Ins. Co. v. Chase Manhattan Bank, N.A., 649 F.2d 36, 38–39 (1st Cir. 1981); Puerto Rican Federal Relations Act, 48 U.S.C. § 731 *et seq.*
>
> Today, the government of the Commonwealth of Puerto Rico in many respects resembles that of a state. It has an elected governor and legislature, and its legislature has powers akin to those exercised by the states. *See* 48 U.S.C. § 821. Puerto Rico has immunity to suit in common with state governments. Alcoa Steamship Co. v. Perez, 424 F.2d 433, 435 (1st Cir.1970). Except for various tax code provisions and certain other exceptions, federal statutes apply in Puerto Rico, as they do in any state, unless otherwise provided. 48 U.S.C. § 734. Citizens of Puerto Rico, like citizens of the states, are citizens of the United States. 8 U.S.C. § 1402. The United States guarantees Puerto Rico a republican form of government and Puerto Rico is bound to respect the rights, privileges and immunities of all citizens. 48 U.S.C. §§ 731, 737. Compare U.S. Const. art. IV, § 4; amend. XIV, § 1.
>
> Nevertheless, under the 1950 and 1952 legislation "the status of the Commonwealth of Puerto Rico is still not the same as that of a State in the Federal Union, though both have in common complete powers of local self-government." Magruder, *The Commonwealth Status of Puerto Rico*, 15 U.Pitt.L.Rev. 1, 19 (1953) (footnote omitted). Puerto Rico is not formally a state, has no Senators and no voting representation in the House, and in certain respects it has been treated differently than states by the courts. For example, under governing Supreme Court precedent, Congress may, and sometimes has, enacted laws that make different provision for Puerto Rico than for the states, limited only by a rational basis requirement. Harris v. Rosario, 446 U.S. 651, 100 S.Ct. 1929, 64 L.Ed.2d 587 (1980). While fundamental constitutional rights are protected in Puerto Rico, not all federal constitutional rights have been held to apply in Puerto Rico, *see* Balzac v. Porto Rico, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627 (1922) (right to jury trial), and the Court has declined to decide whether Puerto Rico is governed by the Fifth or by the Fourteenth Amendment. Rodriguez v. Popular Democratic Party, 457 U.S. 1, 7–8 n. 6, 102 S.Ct. 2194, 2199 n. 6, 72 L.Ed.2d 628 (1982). In sum, Puerto Rico's status is unique. Examining Bd. v. Flores de Otero, 426 U.S. 572, 596, 96 S.Ct. 2264, 2278, 49 L.Ed.2d 65 (1976).

Having recognized the legal and political relationship between both countries, the Court is equipped to analyze the statute in controversy. To be clear, the Court notes that 15 U.S.C. § 1 is the only statute invoked by the government. However, the juxtaposition of

said statute with another related Sherman Act statute aids in the comprehension of this analysis:

> 15 U.S.C. § 1
> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce **among the several States, or with foreign nations**, is declared to be illegal. . . .
>
> (emphasis provided).
>
> 15 U.S.C. § 3
> (a) Every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce in any **Territory of the United States** or of the District of Columbia, or in restraint of trade or commerce between any such **Territory** and another, or between any such **Territory or Territories** and any State or States or the District of Columbia, or with foreign nations, or between the District of Columbia and any State or States or foreign nations, is declared illegal. . . .
>
> (emphasis provided).

A comparison between the two aforementioned statutes reveals that 15 U.S.C. § 3 simply reiterates the illicit conduct made illegal by 15 U.S.C. § 1; however, the main difference between both statutes is that 15 U.S.C. § 3 applies to fact patterns where a U.S. Territory is involved. In an antiquated case, the Supreme Court determined that, with respect to the Sherman Act, Puerto Rico is a "territory." <u>People of Puerto Rico v. Shell Co.</u>, 302 U.S. 253, 259 (1937). Nonetheless, the denomination of "U.S. territory" no longer applies to Puerto Rico as the legal status as to the Sherman Act has long since been changed.

Congress passed the Puerto Rican Federal Relations Act ("FRA"), 64 Stat. 319, in 1951. The FRA allowed Puerto Rico to enact its own Constitution; soon thereafter, the Commonwealth of Puerto Rico came into existence. Consequently, after thorough analysis, the First Circuit determined that Puerto Rico is no longer a "territory" for the sake of the Sherman Act. <u>Cordova & Simonpietri Ins. Agency Inc. v. Chase Manhattan</u>, 649 F.2d 36 (1st Cir. 1981) (finding that the Supreme Court's determination in *Shell* no longer applies to Puerto Rico). In the same breath, moreover, the First Circuit ruled that Puerto

Rico is a "State" for the purposes of the Sherman Act. Id. at 44; R.W. Int'l Corp. v. Welch Food, Inc., 13 F.3d 478, 489 (1st Cir.1994); Arroyo-Melecio v. Puerto Rican American Ins. Co., 398 F.3d 56, 66 (1st Cir. 2005) ("Puerto Rico is considered to be a state for purposes of sections 1 through 3 of the Sherman Act, as amended and codified at 15 U.S.C. §§ 1-3"); *see also* Trailer Marine, 977 F.2d at 6-9 (establishing that the dormant commerce clause applies to Puerto Rico); Antilles Cement Corp. v. Fortuno, 670 F.3d 310, 321-22 (1st Cir. 2012); *and* 48 U.S.C. § 734.[1] Hence, 15 U.S.C. § 1 circumscribes the illicit conduct charged in the indictment. However, the resolution of these motions does not conclude with this determination; to the contrary, Defendant's bow of legal arguments contains several other arrows.

First, Defendant argues for a dismissal of the charges via the application of the *rule of lenity*. To quote Defendant: "[i]f an ambiguous criminal statute is susceptible to two or more reasonable interpretations, a court is obligated to construe the statute in the manner favoring the defendant (here, that 'several States' in [15 U.S.C. § 1] does not include Puerto Rico)." (Docket No. 117, p. 17). However, in light of the First Circuit's unambiguous interpretation that Puerto Rico is a "State" for the sake of 15 U.S.C. § 1, this argument is misdirected. Accordingly, the statute in question is not ambiguous; therefore,

---

[1] 48 U.S.C. § 734

The statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States, except the internal revenue laws other than those contained in the Philippine Trade Act of 1946 [22 U.S.C.A. § 1251 et seq.] or the Philippine Trade Agreement Revision Act of 1955 [22 U.S.C.A. § 1371 et seq.]: *Provided, however*, That after May 1, 1946, all taxes collected under the internal revenue laws of the United States on articles produced in Puerto Rico and transported to the United States, or consumed in the island shall be covered into the Treasury of Puerto Rico.

the *rule of lenity* may not be applied to the instant controversy. Hence, a denial on these grounds is mandated.

Second, Defendant invokes the *doctrine of constitutional avoidance* while arguing for a dismissal. Essentially, Defendant claims that 15 U.S.C. § 1 should be interpreted in a manner that would avoid a substantial constitutional question (whether or not Puerto Rico is a "State" for the purpose of 15 U.S.C. § 1). However, "the canon of constitutional avoidance does not apply if a statute is not 'genuinely susceptible to two constructions.'" Gonzales v. Carhart, 550 U.S. 124, 154 (2007) (citing Almendarez–Torres v. United States, 523 U.S. 224, 238 (1998); *and* Clark v. Martinez, 543 U.S. 371, 385 (2005)). Moreover, in light of the First Circuit's unequivocal interpretation that Puerto Rico is a "State" for the sake of 15 U.S.C. § 1, there can be no ambiguity. As such, the challenged statute is not genuinely susceptible to a different construction. Therefore, *the doctrine of constitutional avoidance* is inapplicable to the instant controversy. The following quote aptly describes the Court's determination on this matter:

> This rule has no application in the present case. As stated, the doctrine of constitutional doubt only comes into play when there are "two plausible constructions" of a statute; "the absence of any ambiguity defeats the constitutional avoidance argument." [United States v. Dwinells, 508 F.3d 63, 70 (1st Cir.2007)]. As the statute here is not ambiguous, the rule does not come into play.
>
> U.S. v. Booker, 644 F.3d 12, 22 (1st Cir. 2011).

Third, Defendant essentially claims that Congress has not been clear that 15 U.S.C. § 1 applies to Puerto Rico. Thus, Defendant requests a dismissal of the indictment. However, once again, the aforementioned case law – which clearly establishes that Puerto Rico is a "State" for the sake of the Sherman Act – bases said determination on the grounds that Congress clearly desired such an outcome. Cordova, 649 F.2d at 44; Welch, 13 F.3d at 489; Arroyo-Melecio, 398 F.3d at 66; *see also* Antilles Cement Corp., 670 F.3d

at 321-22; *see also* <u>Trailer Marine</u>, 977 F.2d at 6-9; *and* 48 U.S.C. § 734.  Therefore, this Court finds, following the reasoning of the First Circuit, that Congress has been clear as to the resulting application of 15 U.S.C. § 1 to Puerto Rico.  Hence, this contention is to be denied as well.

Fourth, Defendant avers that the indictment in question is deficient as the same lacks any allegation that there was a restraint "among the several States" as required under 15 U.S.C. § 1.  Defendant believes that this omission warrants a dismissal of the instant indictment.  However, as the indictment is replete with allegations that Defendant created "unreasonable restraint of interstate trade and commerce," this claim is easily dispatched and consequently denied.  *See* Docket No. 1.  The indictment properly invokes 15 U.S.C. § 1 with each of the necessary elements; further, the instant indictment complies with the requirements of Fed. R. Crim. P. 7(c)(1).[2]  Contrary to Defendant's contention, no further allegation is required of the instant indictment.  This argument is additionally denied.

Fifth, in similar fashion, Defendant points out that the grand jury never made an explicit finding that Puerto Rico is a "State."  Nevertheless, the Court notes that Defendant cites no case law in support of this position.  The indictment does not have to specify that

---

[2] Fed. R. Crim. P. 7(c)(1)

*In General.* The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated. For purposes of an indictment referred to in section 3282 of title 18, United States Code, for which the identity of the defendant is unknown, it shall be sufficient for the indictment to describe the defendant as an individual whose name is unknown, but who has a particular DNA profile, as that term is defined in section 3282.

Puerto Rico is a "State" as the law clearly establishes that the term "State" encompasses Puerto Rico as explained by the First Circuit, see Arroyo-Melecio, 398 F.3d at 66.  As it stands, as previously alluded to, the indictment is adequate in law; hence, no further findings by the grand jury were required.  To be clear, the indictment need not allege that Puerto Rico is a "State."  See 15 U.S.C. § 1; Fed. R. Crim. P. 7(c)(1).  Finally, this last allegation is also denied.

Taking the analysis one step further, Congress passed the Sherman Act pursuant to the constitutional authority established by the commerce clause.  See U.S. Const. art. I, § 8, cl. 3.  As previously alluded to, the First Circuit has clearly recognized that the commerce clause of the U.S. constitution applies to Puerto Rico in full force.  See e.g. Trailer Marine, 977 F.2d at 6-9.  Moreover, even the Supreme Court of Puerto Rico, while overruling a prior determination to the contrary, has also explicitly recognized that the federal commerce clause applies to Puerto Rico.   E.L.A. v. Northwestern Selecta, 185 D.P.R. 40 (2012) (reversing R.C.A. v. Gobierno de la Capital, 91 D.P.R. 416 (1964)).

For the foregoing causes, the Court hereby **DENIES** each of Defendant's requests contained in the two motions.  See Docket Nos. 117, and 146.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of June, 2014.

/s/ DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. District Judge