# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**
Plaintiff,

v.                                                    Criminal Case No.  3:13-cr-00162-DRD

**THOMAS FARMER,**
Defendant.

# FARMER REPLY BRIEF IN
# <u>SUPPORT OF MOTION TO COMPEL</u>

After six years of investigation, the Government tells this Court that the "most plausible" explanation" for the fact that the previously bound diaries, calendars, journals, and notebooks of its two key witness cooperators (Mr. Glova of Horizon and Mr. Baci of SeaStar) have uniformly been sliced out of their binders and rearranged with portions missing "is that they reflect Glova's and Baci's filing and document handling practices prior to the search warrants being executed" on April 17, 2008.  Opposition, at 4 (Docket No. 156).  The Government refuses to explain how this is possible, much less plausible. Nor does the Government explain why it lacks the curiosity to ask its cooperators about their documents.  Instead, the Government asks this Court to speculate as to how vital bound documents detailing the alleged conspiracy and ostensibly in the Government's custody for the last six years were previously subjected to synchronized surgery by their two authors, the Government's two key cooperator witnesses. The Government's studied ignorance of the lack of integrity of the original documents of its two key witnesses, and its economy with the facts, provide the best evidence yet that the truth lies elsewhere.  Defendant

1

seeks leave to submit this Reply Brief in Support of his motion for an evidentiary hearing (Docket No. 144).

Specifically, the Government:

- Argues *in a footnote* that even if this systematic document spoliation took place while the documents were in the possession of the Government, this fact is somehow not exculpatory under *Brady* because this Court should apply a post-judgment standard of *Brady* materiality; [1]

- Offers speculation but no evidence regarding the unnatural state of this previously bound material evidence, despite the fact that the Government has supposedly been in complete control of these documents and their authors since the search of April 17, 2008, with this material being under the care of a small army of legal personnel (and an unidentified "vendor") ,[2] all of whom are totally silent on the issue of how the original documents were systematically removed from their bindings, reassembled, and now have pages missing;

- Blames its two cooperating witnesses (Glova and Baci) for surgically and systematically altering their bound, hand-written personal documents, without acknowledging that this is itself a new, previously undisclosed, and highly

---

[1]  Opposition, at 2 n.1 (Docket No. 156).  *But see Kyles v. Whitley*, 514 U.S. 419, 422 & n.13 (1995) (evidence of shoddy investigation constitutes *Brady* under *post-judgment* standard).  If the evidence of its two principal witnesses was systematically spoliated while ostensibly in the custody of the Government over the last six years, the Government has bigger problems than a legal dispute over the appropriate pre-judgment *Brady* standard.

[2]  According to a DOJ press release, the Government had five trial attorneys, six paralegals, and one Defense Department agent working at the *Peake* trial, for a total of a dozen DOJ trial participants, not including the anonymous "vendor" mentioned in the Government's brief. Exhibit 1.  Two of these six DOJ paralegals came from the "Information Systems Support Group" of the Antitrust Division.  *Id.*

impeaching Government accusation against the Government's own key
witnesses;

- Offers no justification for its refusal to discuss, or to provide, any and all chain of
  custody evidence and information for these surgically altered and missing
  documents--basic information that any constable should be able to produce;

- Fails to address the photographs and declaration of the defense paralegal
  memorializing the physical condition of the spoliated documents;

- Claims that there is "no material difference" between the copies of the originals,
  and the sliced-up originals, without addressing the undeniable fact that entire
  periods of the original calendar dates, times, and entries are missing or are not in
  chronological order,  a state of affairs for which the entire calendar industry
  cannot reasonably be faulted, but for which the Government can;

- Admits that Peter Baci directed his subordinate to destroy evidence on the day of
  the search in April 2008,[3] but denies that its witnesses have any incentive to
  destroy evidence that "someone else was innocent," despite the fact that the
  Government told Glova at his home prior to the commencement of the search (as
  confirmed in his taped conversations with the agents that morning) that Glova's
  cooperation in implicating others was precisely how he would get leniency and

---

[3] Peter Baci's subordinate at Sea Star, Alex Chisholm, pled guilty to obstruction of justice for his
efforts to spoliate evidence on the day of the search. The Government has admitted that Glova
told them, on the day of the search, that his superior at Horizon and the person from whom he
took over the reins of the conspiracy in 2006, Mr. Gill, "probably destroyed evidence."  Snyder
Letter of June 5, 2013, at 1. (Docket No.97-1,  Gov. Exhibit 1, at 1).  The search warrant for
Glova's home alleging misconduct by the vessel companies was justified, in part, on concern that
Glova would destroy or alter his documents.  Further, the Government was informed within days
of the search that Glova's subordinate had buried documents in his yard after the search.  Having
chronicled this spoliation and spoliation risk, the Government cannot reasonably claim it lacked
notice of this prospect.

credit from the Government,  giving him and Baci the same incentive to incriminate others and to eliminate contrary evidence;

- Asks the Court to accept the Government's complete refusal to address, and continuing indifference to, the spoliated character of its evidence because the defense can probe this issue at trial for the first time on cross-examination of the spoliators, even though the purpose of pre-trial discovery and *Brady* disclosure is to facilitate pretrial investigation in order to promote effective cross-examination under the Confrontation Clause; and,

- Refuses to produce the search warrant inventories for the April 17, 2008 searches (i.e., the lists detailing the items and documents seized)--including the inventory for the documents and material taken from Mr. Glova's home that day, even though this inventory is identified in Glova's FBI 302 report as being attached to this report (Exhibit 2) –because the Government categorically refuses to produce *any* documents referenced in, or attached to, its witness interview reports on the ground that these attachments to its own reports are not in the "possession, custody, or control" of the Government.

## A. Spoliation is Material to A Truth-Based Criminal Justice System.

Here, the Defendant is seeking an evidentiary hearing on the known alternation of material evidence which the Government has just now chalked up to its testifying witnesses.  The First Circuit has made it very clear that trial courts have an obligation to take adequate measures to explore the possibility of evidence spoliation.  *United States v. Paniagua-Ramos*, 251 F.3d 242, 250 (1st Cir. 2001) (upholding sufficiency of government attorney affidavits and juror interviews to explore spoliation).

4

The extensive documents at issue were authored, and handwritten, by the Government's two key witnesses—the two self-proclaimed daily operators of the 50-50 vessel conspiracy from 2006 until the day of the search on April 17, 2008.  These witnesses *are* the Government's case. If they, or their respective companies, have systematically tampered with their own material documents, their credibility, and that of their Government sponsor, is toast. [4]  That the Government cannot, or will not, explain who had access to these documents since April 17, 2008, is incompatible with rudimentary police work and basic litigation practice.  Furthermore, the damage done to the defense by the disappearance of numerous pages of hand-written admissions by the two key alleged conspirators/cooperators is irreparable.

### B. Competition Evidence is Exculpatory

The Government fails to cite any case holding that competition evidence is not exculpatory in an antitrust prosecution, much less that such evidence lacks *Brady* value.  But that is not the position previously taken by Government.  In the *Peake* trial, the Government summarized the antitrust crime for the jury as that the defendants were "conspiring, not competing."  Opening Statement, at 5 (Exhibit 3); Closing Statement (Exhibit 4), at 5.

To that end, the Government's opening and closing arguments began with the very same script:

> We are from the Department of Justice and it is our job to make sure that prices in the market place are set free from unfair competition. That is because competition benefits consumers.

---

[4]  The Government's citation to *United States v. Santiago-Mendez*. 599 F.Supp.2d 95 (D.P.R. 2009) actually harms its position.  This Court justified denial of bail pending appeal on the ground that it did not likely err in admitting trial evidence of defendant's attempted spoliation of evidence by the fabrication of evidence.  *Id*. at 126.

Opening, at 3; Closing, at 3.[5]

> The Sherman Act ['It'] . . . requires businesses to compete.

Opening, at 4; Closing, at 4.

> You heard that's how prices are supposed to be set, by competition between the sellers of things that people buy. Without competition sellers can raise the prices. Without competition there are no great deals on prices like Best Buy, and the like. For customers, making ends meet often depends on getting the best prices. Unfortunately, the customers that ship freight to and from Puerto Rico between at least 2005 and 2008 were not getting the benefits of price competition from the shipping companies. You will hear instead that they were the victims of price fixing and they were paying more because of it. Businesses like Burger King, Office Max and Walgreens, businesses that have stores all over Puerto Rico, they were all paying more than they should have to ship freight to Puerto Rico because Sea Star and Horizon *were conspiring, not competing*.

Opening, at 4-5; Closing, at 4-5 (emphasis added).


By reducing guilt or innocence to the stark choice between "conspiring" and "competing," the Government has admitted that competition is both relevant and exculpatory in this case.

## Conclusion

For the foregoing reasons, this Court should compel the Government to produce chain of custody information and documents relating to the journals, diaries, calendars, and notebooks of Mr. Glova and Mr. Baci, and should conduct an evidentiary hearing into how they were altered and became lost.

Respectfully submitted,


Dated: June 30, 2014                         By*: /s/*  Terrance G. Reed

---

[5]  In his Opening, Mr. Snyder added that "Congress passed the Sherman Act because it was so concerned that consumers need to buy things to feed and clothe their families." Ex. 3, at 3.

/s/ _V. Thomas Lankford_
Terrance G. Reed (Pro Hac Vice)
Thomas Lankford (Pro Hac Vice)
Lankford & Reed, PLLC
120 N. St. Asaph Street
Alexandria, VA  22314
(Phone) 703-299-5000
(Facsimile) 703-299-8876
tgreed@lrfirm.net


By: /s/ _Mark Rosenblum___
Mark Rosenblum (Pro Hac Vice)
Mark Rosenblum, P.A.
1300 Riverplace Boulevard, Suite 601
Jacksonville, FL 32207
(Phone) 904-396-6100
(Facsimile) 904-346-4481
mark@markrosenblumlaw.com


By: /s/ _Joseph C. Laws_____
Joseph C. Laws (USDC-PR Bar No. 120306)
239 Arterial Hostos Avenue, Suite 402
San Juan, PR 00918
(Phone) 787-754-7777
(Facsimile) 787-763-5223
lawofficesofjosephlaws@gmail.com

*Counsel for Defendant Thomas Farmer*

7

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify on the 30th day of June, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig Y. Lee, PR Attorney #G01208
Jon B. Jacobs, PR Attorney #G01508
Trial Attorneys
U.S. Department of Justice
Antitrust Division
National Criminal Enforcement Section
450 5th St., NW Suite 11300
Washington, DC 20530
Tel: (202) 307-6694
Fax: (202) 514-6525
Email: jon.jacobs@usdoj.gov

        By: /s/ Terrance G. Reed (Pro Hac Vice)
        LANKFORD & REED, PLLC
        120 N. St. Asaph Street
        Alexandria, VA  22314
        (Phone) 703-299-5000
        (Facsimile) 703-299-8876
        tgreed@lrfirm.net