**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**UNITED STATES OF AMERICA,**
Plaintiff,

v.                                                                    Criminal Case No.  3:13-cr-00162-DRD

**THOMAS FARMER,**
Defendant.

**MOTION *IN LIMINE* TO BAR THE PROSECUTION**
**FROM SOLICITING JUROR BIAS**

Defendant Thomas Farmer respectfully moves this Court for an *in limine* order barring the Government from soliciting or creating bias among the jury in this case.  As demonstrated in the *Peake* trial, the Government in its opening and closing arguments, and in the presentation of its case, repeatedly attempted to convince the jury that the conspiracy alleged in that case victimized the jurors, and Puerto Rico consumers generally, by causing an increase in the price of consumer goods.  From the price of Whoppers to the cost of government school lunches for children, the Government consistently implanted the message with the jury that they and their families paid higher prices for their goods because of the alleged conspiracy.  Although the Government defended its conduct on the ground that its persistent references to consumers really mean shipping customers, this Court understood the message being given and twice instructed the jury to disregard such appeals.  Because hindsight is foresight, this Court should directly bar the Government from making such improper appeals to jury prejudice at the Farmer trial.

1

**Factual Background**

On January 24, 2013, *Peake* was convicted under an almost identical Indictment of violating the Sherman Act.  From the beginning of the *Peake* trial, the prosecution characterized the purpose and effect of the alleged conspiracy as causing the increase of consumer prices paid by Puerto Rican consumers.  From beginning to end, the prosecution claimed that it was prosecuting the case on behalf of the consumers of Puerto Rico—i.e., the jurors--while simultaneously claiming to this Court that it was limiting its case to the contention that the conspiracy was victimizing shippers (i.e., Office Max).

To that end, the Government's opening and closing arguments began with the very same script:

> We are from the Department of Justice and it is our job to make sure that prices in the market place are set free from unfair competition. *That is because competition benefits consumers.*

Opening at 3, Closing, at 4 (emphasis added).

The Government's summoning of the sympathies of the jurors as Puerto Rico consumers in its Opening Statement was relentless, telling the jury:

> Congress passed the Sherman Act because it was so concerned that consumers need to buy things to feed and clothe their families.

Opening, at 20.

> You will hear from a witness . . . who owns all the Burger Kings in Puerto Rico. He will tell you that the shipping costs are factored into the costs of the whoppers sold at Burger King.

*Id.* at 25.

> There will be evidence that the government used the shipping companies to ship food for the school lunch program. The federal program gives free and reduced price lunches to families who can't afford to pay for their lunches. You will hear from the Department of

2

> Agriculture, USDA which will tell you that paying more for shipping
> meant that the government had less money in the school lunch program
> to buy food for school children."

*Id.* at 26 (emphasis added).

In response to defense objections, this Court properly recognized the prejudicial effects

such appeals to the jury's  interests as consumers promptly stepped in to protect against such an

effect by instructing the jury during the trial, and in its closing instructions, that the jurors cannot

to indulge in that economic bias.

That this was intentional conduct by the Government is confirmed by a number of press

releases it issued before and after the *Peake* trial.  For example, upon Peake's conviction, the

Department of Justice, Office of Public Affairs, issued a press release broadcast over the internet

dated January 29, 2013, stating in part that, "The coastal shipping conspiracy affected the price

of nearly every product that was shipped to and from Puerto Rico during the conspiracy." Exhibit

1.  The same day, another press release was broadcast over the internet describing the efforts of

the five lawyers and seven paralegals at the *Peake* trial, and announcing that the conspiracy

"affected nearly all goods that were shipped to and from Puerto Rico during the charged period,

including food, medicine, and electronics."  Exhibit 2.  On January 29, 2013, the FBI issued its

own press release over the internet, repeating the same quote from Assistant Attorney General

Bauer that the conspiracy "affected the price of nearly every product that was shipped to and

from Puerto Rico."  Exhibit 3.  These and similar other government assertions about Puerto Rico

consumer victims were continuously available to the grand jurors over the internet. In August,

2012, for example, the Justice Department issued a press release over the internet stating that

Crowley "forced consumers to pay inflated rates for these services" Exhibit 4.

Mr. Farmer was indicted six weeks later on March 21, 2013.  Upon his indictment, the Department of Justice, Office of Public Affairs, issued yet another press release quoting Bill Baer, the Assistant Attorney General in charge of the Department's Anti-Trust Division, as confirming that "today's indictment charges this executive [Mr. Farmer] with participating in a price-fixing conspiracy that affected the cost of shipping many consumer goods to Puerto Rico." Exhibit 5.

The Government's appeals to the bias of jurors were not limited to its appeals during the *Peake* trial and its surrounding public announcements leading up to the Indictment in this case. During the grand jury proceedings, the prosecution placed before the grand jurors their contention that the conspiracy concerned consumer goods in Puerto Rico and that it had an effect on the prices paid by Puerto Rican consumers.

This Court should not only bar the Government from making such appeals to the jurors, it should bar the prosecution from making veiled appeals, such as by referring to "consumers," "consumer goods," or goods that are sold in stores in Puerto Rico, or goods that are bought or sold in Puerto Rico.

.

## Applicable Law

"The jury may not return a verdict based on personal interest, bias or prejudice, and an argument asking it to do so is improper." *Caudie v. District of Columbia*, 707 F.3d 354, 359 (D.C. Cir. 2013) (citing cases).  Bias is presumed as a matter of law when a juror is a victim of the alleged offense.  *United States v. Torres*, 128 F.3d 38, 41 (2d Cir. 1997) (mandatory presumption when petit jurors "were victims of the alleged crime itself"), cited with approval in *Sampson v. United States*, 724 F.3d 150, 167 (1st Cir. 2013) ("When a juror has life experiences

4

that correspond with the evidence presented during the trial, that congruence raises obvious concerns about the juror's possible bias.").

Even without this legal presumption of actual bias, courts have consistently prohibited appeals to jurors as victims. *See, e.g.*, *Viereck v. United States*, 318 U.S. 236, 247 & n.3 (1943) (suggesting to jury that conviction necessary to protect themselves); *Boyle v. Million*, 201 F.3d 711, 718 (6th Cir. 2000) ("Furthermore, closing arguments that appeal to class prejudices, encourage juror identification with crime victims,  or vouch for the defendant's guilt would each be deemed beyond ethical bounds.").

In *United States v. Maine Lobster Co*., 160 F. Supp. 122, 125 (D. Me. 1957), for example, a district court excused a lobster fisherman from grand jury service on an investigation into price fixing of lobster fisherman by lobster dealers because he might have been an aggrieved party.  As set forth below, the prosecution repeatedly invited the grand jurors to consider the impact of the alleged conspiracy on the "*types of consumer goods that consumers in Puerto Rico would go ahead and purchase in stores here*?"

Similarly, the venerable "Golden Rule" squarely prohibits counsel from trying to invite the jury to put themselves into the role of victims. *Granfeld v. CSX Transp., Inc.*, 597 F.3d 474, 491 (1st Cir. 2010) ("The walking in plaintiff's shoes argument, or as it is sometimes called, the Golden Rule argument, has been 'universally condemned because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on evidence.'"); *Whitehead v. Food Max of Mississippi*, 163 F.3d 265, 278 (5th Cir. 1998) (same); *Ivy v. Security Barge Lines, Inc.*, 585 F.2d 732, 741 (5th Cir. 1978) (same).  In this manner, the prosecutors invited the grand jury to consider what would have happened "if any of us in this room" had shipped goods subject to the conspiracy.

Likewise, appeals by counsel to regional bias constitute reversible error. *Whitehead v. Food Max of Mississippi*, 163 F.3d 265, 278 (5th Cir. 1998) (counsel statements appealing to "local bias" improper);  *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 540-41  (2d Cir. 1992) (" No verdict may stand when it is found in any degree to have been reached as a result of appeals to regional bias or other prejudice.").

The Government's appeal to the interests of the *Peake* jurors, and the grand jurors in this case,[1] was not accidental. From January 29, 2013 forward, the jurors could go on the internet and see for themselves the Justice Department's daily broadcasts about the Department holding "accountable" executives in the "coastal shipping price-fixing conspiracy [that] affected the price of nearly every product that was shipped to and from Puerto Rico during the conspiracy." Exhibit 6.  In effect, the Government comments before the Peake jury and the grand jury about consumer victims were accurately summarized daily by the Department itself.

Given the established pattern of soliciting juror bias by the Government, this Court cannot rely now of the effectiveness of a curative instruction later.  *See, e.g.*, *Caudle*, 707 F.3d at 363 (improper bias arguments cause cumulative prejudice, four improper arguments warrant new trial).  Instead, this Court should order the Government not to make such arguments to the jury now.

Some curative instructions are ineffective.  *See, e.g.*, *Bruton v. United States*, 391 U.S. 123, 135 (1969) (("there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored"); United States v. Ayala-Garcia, 574 F.3d 5, 21-22 (1st Cir. 2009); *Caudle*, 707 F.3d at 362 (general instruction did not

---

[1]  See Docket No. 132 (motion to dismiss for soliciting grand jury bias).

sufficiently counter prejudice of inviting juror bias). Because of this, courts issue *in limine* orders to prevent the problem at the outset. *See, e.g.*, *Austin v. Hill*, 2014 WL 30542, 68 (E.D. Pa. July 7, 2014) (granting an in limine motion barring Golden Rule arguments because: "The risk of allowing an accumulation of improper statements to create a harm that would be insufficiently remedied by a curative instruction mitigates against allowing such statements before a jury at all.").

## Conclusion

As this Court recognized in the *Peake* trial, there is no proper place for such appeals to the jury's personal interests. Accordingly, the Defendant requests an *in limine* Order up front, letting the Government know that such efforts will not be tolerated.

Respectfully submitted,

Dated: September 2, 2014

By*: /s/*  Terrance G. Reed
Terrance G. Reed (Pro Hac Vice)
V. Thomas Lankford (Pro Hac Vice)
Lankford & Reed, PLLC
120 N. St. Asaph Street
Alexandria, VA  22314
(Phone) 703-299-5000
(Facsimile) 703-299-8876
tgreed@lrfirm.net
vtlankford@lrfirm.net

By: /s/  Mark Rosenblum
Mark Rosenblum (Pro Hac Vice)
Mark Rosenblum, P.A.
1300 Riverplace Boulevard, Suite 601
Jacksonville, FL 32207
(Phone) 904-396-6100
(Facsimile) 904-346-4481
mark@markrosenblumlaw.com

By: /s/  Joseph C. Laws

Joseph C. Laws (USDC-PR Bar No. 120306)
239 Arterial Hostos Avenue, Suite 402
San Juan, PR 00918
(Phone) 787-754-7777
(Facsimile) 787-763-5223
lawofficesofjosephlaws@gmail.com

*Counsel for Defendant Thomas Farmer*

## CERTIFICATE OF SERVICE

I hereby certify on the 2nd day of September, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig Y. Lee, PR Attorney #G01208
Jon B. Jacobs, PR Attorney #G01508
Trial Attorneys
U.S. Department of Justice
Antitrust Division
National Criminal Enforcement Section
450 5th St., NW Suite 11300
Washington, DC 20530
Tel: (202) 307-6694
Fax: (202) 514-6525
Email: jon.jacobs@usdoj.gov

By: /s/ Terrance G. Reed (Pro Hac Vice)
LANKFORD & REED, PLLC
120 N. St. Asaph Street
Alexandria, VA  22314
(Phone) 703-299-5000
(Facsimile) 703-299-8876
tgreed@lrfirm.net