IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
Plaintiff,

v.

THOMAS FARMER,
Defendant.

Criminal No. 03:13-cr-00162 (DRD)

## DECLARATION OF SPECIAL AGENT BYRON THOMPSON

I, Byron Thompson, hereby declare as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). During the time of the relevant events, I was working in the FBI's Jacksonville, Florida Field Office. I have personal knowledge of the matters set forth herein and, if called as a witness, could and would testify competently thereto.

2. I was the FBI Case Agent for the government's investigation of a price fixing conspiracy among companies providing water freight services between Puerto Rico and the rest of the United States. On April 17, 2008, I supervised and participated in the execution of a search warrant at the corporate offices of Sea Star Lines, LLC ("Sea Star") in Jacksonville, Florida. Other search warrants were executed by the FBI that same day at other locations, including the corporate offices of Crowley Liner Services, Inc. ("Crowley") in Jacksonville, Florida and at the corporate offices of Horizon Lines, LLC ("Horizon") in Charlotte, North Carolina.

3. All of the material seized in connection with the search warrants executed in this investigation on April 17, 2008 was consolidated and stored under my supervision in an FBI warehouse in Jacksonville, Florida.

4.      The FBI hired a third-party copying service, Downtown Business Center ("DBC") in Jacksonville, to make electronic copies of all the seized documentary material in this investigation. The FBI had used DBC for the same purpose in previous investigations, and DBC was hired for this investigation because it was always very careful in handling original documents and other evidence seized by the FBI.

5.      At my direction and under my supervision, DBC conducted its work in this investigation on site at the FBI warehouse where the documents were stored. DBC brought its scanners and laptops to the warehouse and made an electronic copy of all of the seized documents there. DBC has performed such work outside its own office at other times and was willing to do the same in this case.

6.      At all times, an FBI employee was present and supervised the work being performed by DBC in this matter to ensure that all of the documents were preserved and returned to the same evidence envelope or box from which they came. Most of the time, I was present during this process. At other times, an FBI forensic accountant was present.

7.      In order to keep the copying process as organized as possible, my regular practice in this case was to bring out of storage only a limited amount of material—usually, just one banker's box of documents at a time—to the DBC personnel for scanning. This allowed me to supervise the scanning process closely and ensure that none of the documents were being misplaced. The process of making an electronic copy of all of the seized documents took approximately two to four weeks to complete.

8.      Part of the seized documentary material consisted of spiral-bound notebooks with handwritten notes on some or all of the pages. There were also some personal calendars and daily planners that had pages that were bound together. DBC personnel asked me whether it was

permissible for them to separate the pages from the binding in such notebooks and calendars because otherwise it would be very difficult for them to make a proper scan of the relevant pages. I permitted them to do so as long as they otherwise preserved all of the pages in their original condition and then kept those pages together with the original cover with the use of a binder clip. I supervised this process as well and believe that DBC followed my instructions.

9. Once the seized documents were in storage at the Jacksonville warehouse, no one had access to these documents except for myself or other FBI personnel. At no time did Gregory Glova or Peter Baci have access to the original documents that had been seized before they were scanned.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 24th day of November, 2014 at Greenville, South Carolina.

*Byron Thompson*
Byron Thompson
FBI Special Agent